**Beverly J. FEW, Plaintiff–Appellee, Cross–Appellant,**

v.

**YELLOW FREIGHT SYSTEM, INC., et al., Defendants–Appellants, Cross–Appellees.**

**Nos. 86–3484, 86–3546 and 86–3692.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 4, 1988.

Decided April 25, 1988.

Edward C. Kaminski (argued), James D. Kurek, Buckingham, Doolittle & Burroughs, Akron, Ohio, for defendants-appellants, cross-appellees.

Bruce B. Elfvin (argued), Elfvin & Associates, Cleveland, Ohio, for plaintiff-appellee, cross-appellant.

Before ENGEL, Chief Judge *,

* The Honorable Albert J. Engel assumed the duties of Chief Judge effective April 1, 1988.

RYAN, Circuit Judge, and EDWARDS, Senior Circuit Judge.

GEORGE CLIFTON EDWARDS, JR., Senior Circuit Judge.

This is an employment discrimination case which was tried for 18 days before Judge Sam Bell in the Northern District of Ohio and a jury. The jury heard the claims arising under 42 U.S.C. § 1981 and other state law claims. The Title VII issues were tried by the court. The jury returned a verdict in favor of the plaintiff against Yellow Freight and Supervisor Elson. The jury awarded $10,000 in compensatory damages and $5,000 in punitive damages to Few. Subsequently trial of the Title VII claims was resumed and the District Court entered judgment for plaintiff on that claim awarding her back pay with interest of $49,364.19. The court also ordered her reinstatement, the adjustment of her profit-sharing plan and the cost of bringing this action.

Yellow Freight contends that the District Court's findings and conclusions were clearly erroneous. To further complicate the matter, the plaintiff appeals the judgment in relation to the damage award which she asserts is incomplete.

It is, of course, obvious that the District Judge who tried this case for 18 days had a far clearer opportunity than this court has to evaluate the factual disputes in this case and to make a fair judgment. A critical part of his findings dealt with plaintiff's claim that Yellow Freight deliberately built a file against her in order to be able to terminate her.

The District Court found that:

At the time of the June evaluation on the plaintiff or shortly thereafter, Mr. Gram was instructed by Mr. Elson to start documenting the plaintiff's personnel file whenever a mistake was made by her. According to Mr. Gram, Mr. Elson stated that there was a need to build a file against the plaintiff in order to eventually terminate her employment with Yellow Freight. In the four and one-half years from the date she started as a dispatcher until her June, 1983 evaluation, the plain-

tiff had received approximately eight write-ups in her personnel file. In the next four months until her termination, the plaintiff would be the recipient of approximately sixteen additional write-ups in her personnel file.

While the defendants hotly contest this finding, the only error by the court was in attributing the conclusion to a statement by Mr. Gram. While Gram did not explicitly testify that he was building a file on Ms. Few, he did testify that she was one of four of the dispatchers being watched closely by him and whose mistakes were being documented "to see if we could get improvement out of them." However, the dramatic increase in the number of write-ups in Few's file is well-documented in the record. It is also notable that two employees of Yellow Freight at that time called the corporate headquarters on their own initiative to complain about the discriminatory treatment Few was receiving. Ralph Lee, a road driver, called in mid–1983 to complain specifically "that they were building a case on Beverly" and to make it clear he would testify for her if she ever complained to a court of law. In one of these conversations, a Mr. Demuth from corporate headquarters indicated that the treatment of Ms. Few had met "with prior approval" at corporate headquarters. Thomas Canitia, a former yard worker and current city driver, also called corporate headquarters in mid–1983 to complain about "unfair discipline on certain individuals" which he felt was being directed at Ms. Few.

The District Court also dealt specifically with the credibility of the witnesses. His opinion on this score recited as follows:

In making these factual determinations the court has been required to assess the credibility of the testimony of a number of witnesses who are present and former employees of Yellow Freight. Specifically, much of the testimony of Mr. Gram and Mr. Elson was in conflict as well as in conflict with several other witnesses who testified. In some instances witnesses who were non-parties to the action and who had no apparent reason to

be bias (sic) or prejudice (sic), directly contradicted the statements of Mr. Elson and Mr. Gram.

Jt.App. 131.

Our review of this record simply does not allow us to hold that the District Judge's findings are clearly erroneous.

As to the Title VII case, Few claimed that she was treated differently from the other employees because she was a black woman and that she was treated in a less favorable manner than white male co-workers were treated.

While we recognize that Yellow Freight vigorously denies that its supervisors undertook to "build a file on Few," the District Judge concluded that in fact she was treated differently from male workers who were employed in the same classification. On this score, the District Judge made detailed findings.

> The evidence leaves no doubt that agents of defendant in Cleveland determined that Ms. Few must be terminated when the occasion for "good cause" arose. The decision to discharge had been made; only the opportunity to implement that decision remained. The evidence indicates that Mr. Elson and others in Cleveland had concluded that while Ms. Few had worked within the norms of unexceptional performance limits, she possessed no personal potential to do more.
>
> In their opinion she would continue to be not only average, but was apparently unable to be motivated or taught to improve. When her situation is compared to that of others similarly situated it is obvious that she was treated in a manner different than they. It has been noted previously that although her co-workers committed transgressions similar to hers in regard to the relay, when they developed personal problems or illnesses, or when they simply malfunctioned as employees, they were not terminated. They were allowed to retire or in time they were transferred laterally or indeed advanced in position.
>
> The court is persuaded by the evidence that the decision to terminate was one made and implemented as a result of defendant's view of Ms. Few as a black woman—an individual possessed of restricted present capabilities and future potential as a member of her race and sex. Thus, it would appear that while she was as competent (or at times equally incompetent) as her fellow workers, all of whom were white males, she was adjudged on a different standard than were they. Defendant appraised her capabilities and potential and first lessened then terminated her opportunity to serve the company in one or more of the variety of positions held by her counterparts. The court is of the firm belief that plaintiff's final termination came not as a result of delays experienced in the relays, but as a result of plaintiff's stereotypical judgment that this black woman would not succeed. This narrow judgmental view was the motive for discharge as opposed to the nondiscriminatory business reason advanced by defendant.

Jt.App. 137–138.

We recognize, of course, that there was evidence introduced by Yellow Freight which ran contrary to the judge's conclusion on these disputed issues of fact. We cannot, however, hold that his findings are clearly erroneous.

The judgments of the District Court which we referred to above are therefor affirmed. While there is certainly evidence in this record from which the District Judge could have found the facts differently, we find no reason to conclude that his judgment is based on anything other than the evidence in the case. We have considered the cross-appeal of the plaintiff and find it without merit.

RYAN, Circuit Judge (concurring).

It is a wise and settled rule of law that a trial court's findings of fact, especially those resting in substantial part upon the credibility of witnesses, are not to be disturbed on appeal unless "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (*quoting*

*United States v. United States Gypsum,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

The review of bench tried litigation in particular challenges the reviewing court to discipline itself to defer to the trial court's factual findings because such findings often rest largely upon matters of circumstantial evidence—not uncommonly, inferences drawn from sometimes vague or ambiguous testimonial assertions in the direct evidence. The trial court must, in such cases, sort through inferences of sexual or racial animus that are of a piece with ostensible business judgment decisions. It is frequently difficult for a trial court fact finder to distinguish between an employer's judgment call to terminate the marginal employee for purely business reasons, and a judgment to do so for business reasons subtly poisoned by motivations of a sexual or racial nature. When such a case is under review—and this is one—special care must be taken to avoid the substitution of appellate assessment of witness credibility for trial court assessment.

I am not convinced, upon review of the record, that Ms. Few was terminated because she is black or because she is a woman. There is an abundance of evidence that despite her best efforts and unquestioned dedication to her responsibilities, complicated, it appears, by the counterproductive efforts of another employee, she was never able to perform her duties for any extended period of time above a range of performance characterized by her evaluators as "poor to fair" through "performance improvement needed" to "showing improvement" and "performing at about average levels." There is certainly no direct evidence in this record that Ms. Few was terminated because of her race and sex rather than because of her sub-par to marginally acceptable performance. However, in his carefully drafted opinion, the trial court has detailed a number of matters of circumstantial evidence that appear to have convinced that court that the decision to fire Ms. Few was driven, in part, by racial and sexual considerations. While I do not see the matter as he did, I cannot say that the learned trial judge, whose perception of the witnesses and opportunity to assess their candor, demeanor, and persuasiveness was far superior to mine, was clearly erroneous in reaching the decision he has.

For that reason, alone, I concur in the judgment.