Martha FLORES, Plaintiff–Appellant,

v.

PREFERRED TECHNICAL GROUP,
Defendant–Appellee.

No. 98–3458.

United States Court of Appeals,
Seventh Circuit.

Argued April 6, 1999.

Decided June 23, 1999.

Christopher C. Myers (argued), Myers & Geisleman, Fort Wayne, IN, for Plaintiff–Appellant.

Kathleen M. Anderson, Barnes & Thornburg, Fort Wayne, IN, Steven C. Ellingson (argued), Smith, Currie & Hancock, Atlanta, GA, for Defendant–Appellee.

Before KANNE, DIANE P. WOOD, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Plaintiff Martha Flores, the alleged leader of what has been colorfully dubbed "the coffee room rebellion" at Preferred Technical Group (PTG), brought this employment discrimination action claiming that PTG fired her because she is Hispanic. PTG moved for summary judgment, arguing that Flores had not established a *prima facie* case of discrimination because she was not meeting PTG's legitimate job performance expectations when she was fired. The district court agreed and granted summary judgment in favor of PTG. Flores appeals.

Martha Flores worked in an "Assembly & Pack" position at PTG's Columbia City, Indiana, facility from 1990 to 1996. For most of her tenure, she and her fellow workers were apparently accustomed to taking breaks from their work whenever they wanted. The union that represented the workers, however, had signed a collective bargaining agreement with PTG that prohibited unauthorized breaks. The agreement also prohibited strikes or work stoppages of any kind.

In December 1996 management called a meeting of all employees to inform them that PTG would henceforth strictly enforce the no-unauthorized-break rule set out in the union agreement. Flores and her third-shift co-workers chafed at the new policy. To make matters worse, they heard that the rule was not being strictly enforced during the first and second shifts. Flores discussed the perceived inequity with two of her supervisors but was not satisfied with their response. She and her co-workers decided to protest the strict application of the break rule.

At 12:30 a.m. on December 5, 1996, a group of 10–12 employees, including Flores, left their work stations and headed for the company break room. Superintendent Robert Jones and two other supervisors were in the break room when the workers entered. The workers began shouting at the supervisors, complaining

about the new break policy, pouring coffee, and getting drinks from the pop machine. Jones told them all to get back to work. In her deposition, Flores admitted that she was the most vocal of the group. When she saw Jones writing down the names of the workers present she told him to make sure to get her name right. She also told him the names of the others who were present, and she was one of the last workers to leave the room. As the workers were leaving, another group of workers approached. Flores stood just outside the break room door and waved in their direction. Jones believed Flores was exhorting the second group of workers to join the protest; Flores says she was merely greeting a friend in the group. Jones immediately notified Flores that she was suspended for being the instigator of an unlawful work stoppage. He did not have the authority to fire her.

Jones then called Human Resources Manager Dawn Adams to tell her what was going on. Adams arrived at the plant a couple of hours later to investigate the break room rumpus. She talked to Jones and the two other supervisors who were present in the break room and determined that Flores was in fact the ringleader of the coffee room discord, which constituted an illegal work stoppage. Then she fired Flores. Two other Hispanics took part in the break room hubbub, but they were not fired. One of the two was Flores' sister, Casey Barrera. Barrera was fired later in the same shift for wearing a Walkman while working—a terminable safety violation. There is some confusion about the third Hispanic woman who participated in the event, Elaine Collins. Apparently, Collins did not hold herself out as Hispanic, and it is not clear whether anyone at PTG considered her Hispanic. Finally, one non-Hispanic worker, Delois Stevens, was fired for her part in the to-do, but she was only a temporary employee.

Flores filed a claim against PTG for discriminatory discharge under Title VII. She alleged that PTG fired her because she is Hispanic. PTG moved the district court for summary judgment, arguing that Adams fired Flores only because she believed that Flores was the leader of an unlawful work stoppage. Chief Judge William C. Lee granted PTG's motion for summary judgment, and Flores appeals.

We review a grant of summary judgment *de novo*. *See Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 391, 395 (7th Cir.1997). Summary judgment is appropriate when there are no material facts at issue and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). No genuine issue of material fact exists when the record as a whole, considered in the light most favorable to the plaintiff, could not lead a rational trier of fact to find for the nonmoving party. *See Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir. 1992).

 In order to win her national origin discrimination claim at trial, Flores would have to convince a trier of fact that PTG fired her because she is Hispanic. In order to get past a motion for summary judgment, she must do one of two things. She can present direct evidence of the company's discriminatory intent. Or she can use the indirect "burden-shifting" approach approved by the Supreme Court in *McDonnell–Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). There is no direct evidence that PTG fired Flores because she is Hispanic·so she is relegated to the *McDonnell–Douglas* approach. Under that approach, a plaintiff must first establish a *prima facie* case of discriminatory adverse employment action. The linchpin of the plaintiff's *prima facie* case is evidence of disparate treatment between members of the plaintiff's protected class and nonmembers. This disparate treatment creates at least an inference of discriminatory intent, and the burden then shifts to the employer to put forth a legitimate nondiscriminatory reason for its actions. Finally, if the employer comes up with such a reason, the plaintiff must be

able to show a triable issue as to whether it is a mere pretext offered to mask the employer's true discriminatory animus.

In *McDonnell–Douglas*, the Supreme Court addressed a claim of discriminatory hiring. In order to establish a *prima facie* case for discrimination the plaintiff had to show "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell–Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. In *McDonnell–Douglas* and subsequent cases the Court has made it clear that the *prima facie* case cannot be used by rote but must be adapted to fit the varying facts of discrimination cases. *See McDonnell–Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. 1817; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–54 n. 6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In discriminatory discharge cases, for example, a plaintiff generally meets the *prima facie* burden if she establishes that (1) she is a member of a protected class, (2) she was doing her work well enough to meet her employer's legitimate expectations, (3) despite her performance, she was discharged, and (4) her employer sought a replacement for her. *See Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257 (7th Cir.1993).

PTG zeroes in on the second prong of this *prima facie* case and argues that Flores was not satisfactorily performing her job at the time she was fired because she was admittedly participating in an unlawful work stoppage. The district court agreed. This argument, however, fails to take into account the facts of this case and the flexibility of the *McDonnell–Douglas* analysis. Flores admits that she broke the rules but claims that PTG disciplined her more harshly than non-Hispanic rule-breakers. It makes little sense in this context to discuss whether she was meeting her employer's reasonable expectations. None of the employees who joined the coffee room fracas were meeting PTG's reasonable expectations. PTG could have fired any or all of them. The issue in this case is whether Flores was singled out for discipline because she is Hispanic. Therefore, under the facts of this case, Flores does not have to show that she was meeting her employer's legitimate expectations in order to establish a *prima facie* case of discriminatory discharge. Because PTG does not dispute that Flores is a member of a protected class, that she was discharged, and that they replaced her, Flores has successfully established a *prima facie* case of discrimination.

But Flores is not out of the summary judgment woods yet. The next issue is whether PTG has come up with a legitimate, nondiscriminatory reason for firing her and not firing non-Hispanic employees who took part in the coffee room ruction. PTG's burden of proof in this analysis is "quite light," and "the mere articulation of the reason ... puts the onus back on the plaintiff to prove pretext." *Pilditch v. Board of Educ.*, 3 F.3d 1113, 1117 (7th Cir.1993). The reason PTG says it fired Flores is simple: Jones and Adams believed that Flores was the instigator of the coffee room mutiny in violation of the union contract and company policy. Insubordination is a legitimate, nondiscriminatory reason for firing an employee. *See Plair v. E.J. Brach & Sons*, 105 F.3d 343, 345 (7th Cir.1997). Flores was clearly insubordinate when she disobeyed management's direct order not to take unauthorized breaks. PTG could not fire all the insurgents without disrupting its operations and was well within its rights to make an example of the person they perceived was the Spartacus of the coffee room revolt.

Flores contends that her "loud, boisterous" behavior during the break room imbroglio is not a rational reason to label her

the coryphaeus or to treat her differently than non-Hispanic rebels. Courts have occasionally found an employer's articulation of a reason insufficient when the reason is irrational on its face. *See, e.g., Loyd v. Phillips Bros.*, 25 F.3d 518, 524 (7th Cir. 1994) (long-standing policy of considering only members of male-dominated branch of company for promotion where members of female-dominated branch were equally qualified was not a legitimate nondiscriminatory reason); *EEOC v. Northwest Structural Components*, 822 F.Supp. 1218, 1221 (M.D.N.C.1993) (articulated reason that the employee was a "complainer" insufficient where the only specific evidence of complaining were her concerns about disparate treatment because she was a woman). PTG's reasons do not approach this level of irrationality. The company's belief that Flores was the catalyst for the coffee room rumble is a legitimate nondiscriminatory reason for firing her.

 Flores' final chance to preserve her claim is to show that PTG's belief that she was the architect of the coffee room coup is a mere pretext for an underlying discriminatory reason for firing her. This court has consistently held that the employer only needs to supply an honest reason, not necessarily a reasonable one. "In other words, arguing about the accuracy of the employer's assessment is a distraction ... because the question is not whether the employer's reasons for a decision are '*right*' but whether the employer's description of its reasons is *honest*.'" *See Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir.1997), quoting *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir.1992).

Flores invites us to adopt the reasoning of a recent Sixth Circuit decision that requires an employer to show that its "honest belief" is reasonably supported by "particularized facts." *See Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir.1998). Flores gives no particular reason for the change except that she doesn't like our current rule. We refuse her invitation. We do note, however, that a determination of whether a belief is honest is often conflated with analysis of reasonableness. After all, the more objectively reasonable a belief is, the more likely it will seem that the belief was honestly held.

And even if we were to adopt explicitly the Sixth Circuit approach, the record here is replete with particularized facts to reasonably support PTG's belief that Flores was the captain of the protestors' putsch. According to Flores' own account, she was the loudest of the coffee room carbonari, and she took it upon herself to make sure that her supervisor (Jones) got all the names on the list correct. Flores was also one of the first to arrive in the break room and one of the last to leave. Finally, she waved to the second group of workers who came to join the donnybrook. Flores claims that it was unreasonable for Jones to draw conclusions from her loud behavior because she was always loud and boisterous as a matter of course. This fact can cut both ways, however. A person in Jones' position could very easily assume that the historically loudest, most boisterous worker would also be the most likely to foment insurrection. As for Flores' waving, it was reasonable for Jones to guess that she was exhorting more workers to join the row. Maybe he was wrong; maybe Flores was merely a sheep and joined émeute organized by someone else. But there were plenty of facts from which Jones could and did believe that Flores was the grand vizier of the movement.

Finally, Flores tries to show pretext by presenting "facts tending to show that the employer's reasons for some negative job action are false, thereby implying (if not actually showing) that the real reason is illegal discrimination." *See Kariotis* at 677. The facts that Flores presents are numbers. Twenty-seven workers joined the break room unrest. Three Hispanics were among them. Two were recognizably Hispanic, and both of them were fired by the end of the shift. Flores argues these numbers are enough to cast doubt on

PTG's stated reason for firing her. The problem with Flores' argument is that her fellow Hispanic (and sister), Barrera, was not fired because of the uprising. Barrera was fired for an unrelated safety violation later in the shift. Admittedly, it seems a bit fishy that the only two identifiable Hispanics who took part in the tumult were fired before the end of the shift, but Flores has not presented any facts to connect her firing to that of her Walkman-wearing sister.

Flores cannot escape summary judgment. She has not alleged sufficient facts to undermine PTG's assertion that Jones and Adams fired her based on their belief, honestly held, that she was the head rabble-rouser in the coffee room contumacy. She admits to being the loudest and most boisterous when she and the others staged their demonstration. Eager to make an example out of someone, PTG fired the perceived agent provocateur. And eradicating the leader is a time-honored method of bringing a group to heel. That's why Barzini, in Paramount's "The Godfather," tried to rub out Vito, rather than Fredo, when he wanted to cripple the power of the Corleone Family. Flores' naked argument that PTG's explanation was a mere pretext for discrimination does not raise a triable issue of fact. It may very well have been unfair for PTG to behead Flores to make a point—but she does not come close to showing that the company went after her because she was Hispanic. The judgment of the district court is therefore affirmed.