Timothy H. HAZEL, Plaintiff,

v.

MEDICAL ACTION INDUSTRIES, INC., a New York corporation, Defendant.

No. 1:01–CV–17–C.

United States District Court,
W.D. North Carolina,
Asheville Division.

Aug. 16, 2002.

542

Robert E. Dungan, Asheville, NC, for plaintiff.

Jonathan W. Yarbrough, Edwards, Ballard, Bishop, Sturm, Clark & Keim, Asheville, NC, Mark J. Swerdlin, Shawe & Rosenthal, LLP, Baltimore, MD, for defendant.

## MEMORANDUM OF DECISION AND ORDER

COGBURN, United States Magistrate Judge.

**THIS MATTER** is before the court in accordance with 28, United States Code,

Section 636(c), and upon defendant's Motion for Summary Judgment. Having considered defendant's motion, plaintiff's response, and defendant's reply, and having further considered defendant's memorandum of additional relevant authority, the court enters the following findings, conclusions, and decision.

## FINDINGS AND CONCLUSIONS

### I. Factual Background

The factual recitations contained in the briefs of the respective parties are extensive and supported by accurate references to the record. Inasmuch as the court must take the facts in a light most favorable to the party resisting summary judgment, the court incorporates plaintiff's factual recitation. A summary of material facts is included in order to aid further review.

Plaintiff is black or African–American. He was employed by defendant from July 12, 1999, until August 16, 2000, when he resigned. Defendant is engaged in the business of developing and marketing medical and surgical supplies and maintains a manufacturing, warehousing, and distribution center in Asheville, North Carolina. Plaintiff worked in the distribution center as a materials handler and performed the "loader" function for most of his tenure. Although there were 15 materials handlers, there was only one loader, and the other handlers performed duties as pickers and checkers. Plaintiff testified that he enjoyed the loader position, which involved loading finished pallets into trucks with a forklift, but did not enjoy the other jobs because of the frustration in finding the items, which sometimes did not exist. The evidence is undisputed that plaintiff received favorable performance evaluations, including increases in pay, during his 13 months with defendant.

It is equally undisputed that plaintiff's attendance was abysmal, and he missed than 200 regular work hours in the first year and took more than 200 hours of family medical leave. Taken in a light most favorable to plaintiff, he has shown that it was the confusion of defendant's lower-level managers that led to a number of his excused hours of leave being considered unexcused. While the actual reasons for each missed hour are not relevant to the limited inquiry of this court,[1] plaintiff's rate of absence of nearly 20 percent, according to defendant, caused it to take disciplinary action, including giving plaintiff written warnings concerning his absences and reassigning him to a picker position, where his absenteeism would have less impact on the operation.

Plaintiff contends that such disciplinary actions were part and parcel of a hostile work environment that was unlawfully based on his race. He further contends and has presented evidence that white employees received oral rather than written warnings for absenteeism and that a number of his unexcused absences were in fact excused or were mistakes on the part of defendant's managers.

In addition to plaintiff's allegations that on-the-job discipline was meted out differently based on race, plaintiff has also alleged that defendant allowed a racially hostile work environment to fester by not correcting racially derogatory remarks directed at him by fellow employees and his supervisor. He alleges that his supervisor once made a racist remark in asking him if he wanted fried chicken at a company meal and that five nonsupervisory coworkers made six racist comments that were either

---

1. The court has accepted as true plaintiff's version as to what actually occurred as to each absence he disputes and has drawn no unfavorable inference from the fact that he took family medical leave.

directed at him or said in his presence. Plaintiff has testified that the following seven remarks were made to him during his employment:

(1) his supervisor once asked him if he wanted fried chicken at a company meal (Hazel Depo., at 45);

(2) Rocky Wheeler, a materials handler, told Hazel that he wasn't black, but that he was "shit colored" (Hazel Depo., at 50);

(3) Hazel tried to contact coworker David Tuttle over the radio and claims that Tuttle allegedly answered, "what do you want black boy." Hazel then allegedly yelled back into the radio, "did you all hear that" and no one responded (Hazel Depo., at 59);

(4) on one occasion Hazel was on a forklift blocking an aisle and Debbie Morrison supposedly told him to "get his black ass out of the way" (Hazel Depo., at 64);

(5) a coworker named Tom (last name unknown) commented that "blacks are living proof that Indians fuck buffalos" (Hazel Depo., at 64–66);

(6) Tom also commented when plaintiff damaged a shelving support with the fork lift, "let's not go back and nigger rig it" (Hazel Depo., at 64–66); and

(7) C.J. Ellison, another materials handler, made the comment, "I wonder why when white people have a black dog, they either name it nigger or blackie" (Hazel Depo., at 68).

The only comment plaintiff has testified he directly reported to a supervisor was the seventh comment, which he complains was uttered in the presence of another supervisory employee, Ms. Rice. When he asked Rice whether she was "going to let him get away with that," she did not respond. Hazel Depo., at 68. Plaintiff also testified that he complained about Ellison to his supervisor, who told plaintiff that he would take care of it. Hazel Depo., at 163.

It is undisputed that defendant had a written antidiscrimination policy and a grievance procedure. Defendant contends that plaintiff failed to use such procedure and is precluded from the present claim. Plaintiff contends that such rule is inapplicable because Hollifield was responsible for hearing grievances, Hollifield had no training in such procedure, and defendant admits that it never trained its employees on its antidiscrimination policy and grievance procedure until after this action was filed. Hollifield Depo., at 14 & 97; Maciorowski Depo., at 32. It further appears from the court's independent review of the record that a reasonable inference arises that supervisory employees Hollifield and Rice either actively participated in racially derogatory remarks or passively condoned such remarks by remaining silent.

**II. Summary Judgment Standard**

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the nonmoving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving [sic] party, there is no "genuine issue for trial."

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (cita-

tions omitted; emphasis in the original) (quoting Fed.R.Civ.P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. *Id.* "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*

> [T]he court is obliged to credit the factual asseverations contained in the material before it which favor the party resisting summary judgment and to draw inferences favorable to that party if the inferences are reasonable (however improbable they may seem).

*Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir.1980). Affidavits filed in support of defendant's Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. *United States ex rel. Jones v. Rundle*, 453 F.2d 147 (3d Cir.1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. *Davis v. Zahradnick*, 600 F.2d 458 (4th Cir.1979).

### III. Discussion

#### A. Introduction

Plaintiff has alleged six causes of action—racial discrimination in violation of 42, United States Code, Section 1981; retaliation in violation of 42, United States Code, Section 1981; Title VII claims of disparate treatment and hostile work environment; constructive discharge; racial discrimination in violation of North Car-

olina Equal Employment Practices Act; and negligent retention. The court has grouped such claims for discussion where they share similar elements of proof.

#### B. Counts One, Two, and Three: Racial Discrimination Claims

Plaintiff has alleged two federal causes of action for employment discrimination, one under Title VII and another under Section 1981. In counts one and two, plaintiff alleges racial discrimination and retaliation, all under Section 1981. In count three, plaintiff alleges disparate treatment and a hostile work environment under Title VII. Because they are mirror claims, plaintiff's claims under Section 1981 and his disparate-treatment claim under Title VII have been grouped by the court for discussion and disposition. Plaintiff's Title VII hostile-work-environment claim is treated separately, inasmuch as it involves substantially different proof.

In order to establish a *prima facie* claim under Section 1981, plaintiff must present evidence on which he could prevail on each of the following elements:

(1) that he is a member of a protected class;

(2) he was qualified for his job and was meeting the employer's reasonable expectations;

(3) he suffered an adverse employment action; and

(4) the disciplinary measures enforced against him were more severe than those enforced against other employees who are not members of a protected class and who engaged in comparable conduct.

*Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir.1993).

Plaintiff has proffered evidence as to those elements. As to the first element, he has averred in his complaint that he is a

member of a protected class—blacks or African–Americans. As to the second element, plaintiff has tendered his performance evaluation indicating that his performance was satisfactory. As to the third element, plaintiff contends that he received written disciplinary/attendance warnings and ultimately an unwanted transfer. As to the fourth element, plaintiff has submitted evidence in the form of affidavits that white employees did not receive written warnings for similar attendance problems. It is clear that the first element has been met. As to the second element, it is undisputed that when plaintiff was at work, he performed his job well; however, plaintiff had a performance record that was not only poor, but could have justified his termination under the company attendance policy. The defendant's employee handbook provides, in relevant part, as follows:

Medical Action considers your attendance to be critical to your overall contribution to the Company. Because of this belief, attendance will be included as a part of your performance review.

*See* Defendant's Exhibits, docket entry 43, at Ex. 7. While it would not be proper to count against plaintiff his approved leave under the Family Medical Leave Act ("FMLA"), he had 30 days of "chargeable absences," which are absences that adversely affect an employee's attendance record and which must be viewed in the context of an additional 27 days of FMLA leave, all in one year of employment.

If this court were to read the second element as strictly as defendant suggests, the court can imagine no way any claim for racially disparate treatment could ever survive. A disparate-treatment claim in the context of employee discipline is typically based upon some aspect of job performance which was less than satisfactory, but which resulted in less severe treatment for the non-minority. A similar situation was addressed in *Flores v. Preferred Technical Group*, 182 F.3d 512 (7th Cir.

1999), wherein the Seventh Circuit Court of Appeals held, as follows:

PTG zeroes in on the second prong of this prima facie case and argues that Flores was not satisfactorily performing her job at the time she was fired because she was admittedly participating in an unlawful work stoppage. The district court agreed. This argument, however, fails to take into account the facts of this case and the flexibility of the McDonnell–Douglas analysis. Flores admits that she broke the rules but claims that PTG disciplined her more harshly than non-Hispanic rule-breakers. It makes little sense in this context to discuss whether she was meeting her employer's reasonable expectations. None of the employees who joined the coffee room fracas were meeting PTG's reasonable expectations. PTG could have fired any or all of them. The issue in this case is whether Flores was singled out for discipline because she is Hispanic.

*Id.* at 515. Just as in *Flores*, the second element is discounted based on the specific allegations of plaintiff, and this court has focused on what is really at issue: whether plaintiff suffered an adverse employment action and whether that action was more severe based on his race.

■ A written warning that results in no other discipline is not an adverse employment action, especially where, as here, such warning can be expunged. *Skipper v. Giant Food, Inc.*, 187 F.Supp.2d 490, 493–94 (D.Md.2002). Defendant's employee handbook clearly provides that when employees go for six months without having two unexcused absences, "past offenses for unexcused lateness will not be counted against them." Defendant's Exhibits, docket entry 43, Ex. 7, at 7. The court cannot find that the written warnings, which resulted in no reduction in pay or

benefits, are, standing alone, evidence of any adverse employment action.

 The only other relevant employment action is defendant's decision to reassign plaintiff to the job of picker, rather than loader. Plaintiff complains that this job was less desirable simply because it was more physically and mentally demanding. A less desirable job or more difficult job has never been the basis for an adverse employment action; instead, courts look to discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion. *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir.1999); *McCain v. Waste Management, Inc.*, 115 F.Supp.2d 568, 575 (D.Md.2000). The fact that plaintiff voluntarily resigned rather than accept the reassignment is also not evidence of an adverse employment action. *Evans v. Davie Truckers, Inc.*, 769 F.2d 1012, 1014 (4th Cir.1985). In addition, there is absolutely no evidence that defendant retaliated against plaintiff for any assertion of his federally protected rights. Finally, plaintiff has made no showing of any adverse, post-employment action by defendant. *Suarez v. Charlotte–Mecklenburg Schools*, 123 F.Supp.2d 883 (W.D.N.C.2000). Plaintiff's first and second causes of action under Section 1981, as well as his disparate treatment claim under Title VII, must fail on the third element of a *prima facie* case.

Even if the court had found that plaintiff established a *prima facie* case of racial discrimination in employment, his claim would be subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which applies to cases that are dependent upon less-than-direct evidence of discrimination. If plaintiff had proffered a *prima facie* case, then defendant would have been required to articulate a legitimate, nondiscriminatory reason for its actions. The burden would then

have shifted back to plaintiff to prove that the proffered reason was not true and was pretext for discrimination. He would have been required to establish a "legally sufficient evidentiary basis for a reasonable jury to find for [him]." Fed.R.Civ.P. 50(a).

 Defendant has articulated legitimate, nondiscriminatory reasons for issuing the two attendance warnings and its decision to reassign Hazel from the loader function to the picker function. As to the attendance warnings, plaintiff admits to the underlying absences, and defendant has presented evidence that it has applied the policy to persons outside the protected class in a similar manner. *See* Hollifield Affidavit, ¶¶ 3–4. Defendant has also provided legitimate, nondiscriminatory reasons for switching plaintiff from a loader to a picker, all within the same classification as a materials handler. *See* Hollifield Depo., at 64. Defendant has presented two facially legitimate reasons for the transfer. First, plaintiff's absenteeism was problematic, because he was the only loader, and it was difficult to find a replacement for him. Hazel Depo., at 131; Hollifield Depo., at 64. Further, the demands of a major customer for a different process in handling its orders resulted in training another individual in the new process and made plaintiff's absences more intolerable. Hollifield Depo., at 65. Plaintiff was replaced in the loader position with a person of Mexican descent, Salvador Lopez, who had been trained during one of plaintiff's extended absences. Defendant has provided the court with the reason that it made business sense to keep Lopez on the loader function and reassign Hazel upon his return from FMLA leave, Hollifield Depo., at 69–70, which is a legitimate business reason.

Upon defendant's articulation of a legitimate, nondiscriminatory reason for its actions, the burden would shift back to plain-

tiff to show that the legitimate business reason given was pretext for racial discrimination. *Ennis v. National Ass'n Of Bus. & Educ. Radio. Inc.,* 53 F.3d 55 (4th Cir.1995). Plaintiff has offered only his own speculation. Hazel Depo., at 111. This simply is not sufficient to show that his same-pay, within transfer, based on replacement in his former position with another racial minority, was pretextual.

### C. Hostile Work Environment

■ Plaintiff's claim of a hostile work environment is much more problematic. As discussed at length above, plaintiff was subjected to a substantial number of racial remarks and insults at work. Had those remarks been simply the taunts of thoughtless and ignorant coworkers, the court would not hesitate to grant the summary judgment which defendant now seeks. As defendant has correctly pointed out, the federal laws were not intended to micromanage the private workplace by turning warehouses, factories, and shipyards into Sunday school classrooms. Defendant has also pointed to a number of cases in which summary judgment was granted and where plaintiffs had proffered more instances of well-documented racial slurs. Further, defendant has asserted, again correctly, that an antidiscrimination plan and grievance procedure are shields to claims such as this where it is shown that a plaintiff failed to avail himself of such internal procedures. But against all the correct points made by defendant stands the fact that supervisors—the corporate defendant's own agents—directed at least one racially derogatory remark toward plaintiff and stood silent when plaintiff was subjected to racially derogatory remarks from coworkers. This also cuts out the foundation of defendant's argument that plaintiff failed to avail himself of the internal grievance procedure, inasmuch as a reasonable inference would arise from such conduct of the supervisors

that the corporate defendant, through its supervisory employees, condoned and participated in subjecting black employees to racial degradation.

To survive defendant's Motion for Summary Judgment on his claim of a hostile work environment, plaintiff must present evidence upon which a reasonable finder of fact could return a verdict in his favor on each of the following elements:

(1) he was harassed because of his race;

(2) the harassment was unwelcome;

(3) the harassment was sufficiently severe or pervasive to create a hostile work environment; and

(4) some basis exists for imputing liability to the employer.

*Spriggs v. Diamond Auto Glass,* 242 F.3d 179 (4th Cir.2001). Without doubt, the first two elements are satisfied by plaintiff's proffer. As to the third element, the limited number of racial slurs is made more severe than would ordinarily be the case by at least one being uttered by a supervisor and at least one other being made in the presence of another supervisor without any admonition. In such circumstances, a reasonable finder of fact could infer that the work environment condoned by defendant included the unchecked subjection of black employees to racially derogatory remarks from coworkers *and* supervisors, which is clearly hostile.

■ As to the fourth element, defendant correctly argues that there is no strict liability of corporate defendants in the hostile-work-environment arena; however, the court finds that ample evidence has been presented to impute liability. A corporate employer may be held liable for a hostile-environment claim when it had actual or constructive knowledge of the existence of the hostile work environment and took no prompt remedial action, *Paroline v. Unisys Corp.,* 879 F.2d 100, 106

(4th Cir.1989); and even the "absence of notice does not necessarily insulate that employer from liability," *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 72, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Actual knowledge by a corporation is not required, and a company may be found liable where it had "constructive knowledge."

A working definition of "constructive knowledge" is found in *Ohio Farmers Indem. Co. v. Charleston Laundry Co.,* 183 F.2d 682 (4th Cir.1950):

> The general rule of law respecting notice to or by an officer or agent of a corporation is that the rights of the corporation are not affected unless the notice is in regard to a matter coming within the sphere of the agent's duty while attending to the business of the corporation. . . .

*Id.* at 684. While an argument can be made that the alleged racially offensive remarks and the condoning of racial remarks by employees were outside the sphere of a supervisor's duty, *i.e.,* they were not hired to make or condone offensive remarks, an argument also can be made that an aggrieved employee who places an offending supervisor on notice may impute notice to the corporation because receiving such notice was within the range of that supervisor's duty. The Court of Appeals for the Fourth Circuit has held, as follows:

> An individual qualifies as an "employer" . . . if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing, and conditions of employment. . . . As long as the company's management approves

or acquiesces in the employee's exercise of supervisory control over the plaintiff, that employee will hold "employer" status for Title VII purposes.

*Paroline v. Unisys Corp., supra,* at 104. Defendant could, therefore, be held liable for its failure to take adequate remedial steps when an employee only puts the offending supervisor on notice that his conduct is unacceptable. Notice to the supervisor would be notice to the corporation. For purposes of summary judgment only, the fourth element is satisfied by plaintiff's proffer.

### D. Supplemental State–Law Claims

Plaintiff has also submitted claims for constructive discharge, racial discrimination in violation of the North Carolina Equal Employment Practices Act, and negligent retention. The court will consider each below.

### 1. North Carolina Equal Employment Practices Act

 The North Carolina Equal Employment Practices Act does not provide a private right of action for discrimination or retaliatory discharge. *Mullis v. Mechanics & Farmers Bank,* 994 F.Supp. 680 (M.D.N.C.1997); *Ridenhour v. Concord Screen Printers, Inc.,* 40 F.Supp.2d 744 (M.D.N.C.1999); *Spagnuolo v. Whirlpool Corporation,* 467 F.Supp. 364, 365 (W.D.N.C.1979). This court ascribes to such view, even though at least one judge in this district has reached an inapposite conclusion, *see Cox v. Indian Head Industries., Inc.,* 123 F.Supp.2d 892 (W.D.N.C. 2000),[2] an opinion which the undersigned

---

**2.** "Plaintiffs clearly allege a common law claim for wrongful discharge in violation of state public policy as stated in the EEPA". In *Hughes v. Bedsole,* 48 F.3d 1376 (4th Cir. 1995), the Circuit ruled that the EEPA "does not provide for a specific statutory remedy, and we therefore analyze Hughes' claims under the North Carolina common law of

wrongful discharge." *Id.,* at 1383 n. 6. The plaintiff in Hughes alleged she had been wrongfully discharged on the basis of her sex. The Circuit thus recognized such a cause of action and the Court finds the Smith case, in which the Circuit held there is no private cause of action for sexual harassment under the EEPA, inapposite." *Id.,* at 900.

follows in 28, United States Code, Section 636(b) cases, but from which it respectfully departs in Section 636(c) cases.

### 2. Negligent Retention

■ Plaintiff's burden is to allege and now come forward with evidence that (1) the incompetent employee committed a tortious act resulting in injury to plaintiff and (2) that prior to such act, the employer knew, or had reason to know, of the employee's incompetency. *Hogan v. Forsyth Country Club Co.*, 79 N.C.App. 483, 340 S.E.2d 116, 124, *disc. review denied,* 317 N.C. 334, 346 S.E.2d 140 (1986). Here, plaintiff has presented no evidence that defendant knew, or had reason to know, of Hollifield's alleged incompetency. The imputation of knowledge under Title VII simply does not suffice to prove the elements of negligent retention, inasmuch as an element of the common-law tort is that the employer had prior notice based on previous egregious conduct, while under Title VII theory liability is imputed to the employer for wrongful acts of managerial employees. This claim will be dismissed.

### 3. Constructive Discharge

■ Finally, the court has considered plaintiff's claim for constructive discharge. There is no such freestanding tort under federal or state law. Instead, "constructive discharge" is simply an event occurring in lieu of an "adverse employment action" under Title VII in showing a *prima facie* case of discrimination. In *Bristow v. Daily Press Inc.*, 770 F.2d 1251 (4th Cir. 1985), the Court of Appeals for the Fourth Circuit held that a constructive-discharge claim occurs when an employer "deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." Finally, this court can find no North Carolina common-law claim for "constructive discharge." This claim will also be dismissed.

### ORDER

**IT IS, THEREFORE, ORDERED,** that defendant's Motion for Summary Judgment (# 42) is **GRANTED** as to plaintiff's first, second, fourth, fifth, and sixth causes of action and as to the third cause of action as it pertains to disparate treatment, and such claims are **DISMISSED** with prejudice; and

**IT IS FURTHER ORDERED** that defendant's motion is **DENIED** without prejudice as to renewal at the close of plaintiff's evidence as to defendant's third cause of action as it pertains to hostile work environment..