**Antuan PULLIAM, Plaintiff,**

v.

**GENERAL MOTORS, Defendant.**

**No. 04–C–129–C.**

United States District Court,
W.D. Wisconsin.

Jan. 31, 2005.

Antuan Pulliam, pro se.

Daryll J. Neuser, Reinhart Boerner Van Deuren S.C., Madison, WI, for Defendant.

## OPINION and ORDER

CRABB, District Judge.

This is a civil suit for monetary relief in which plaintiff Antuan Pulliam alleges that defendant General Motors terminated his employment because of his race in violation of 42 U.S.C. § 1981. Plaintiff seeks punitive and compensatory damages for his allegedly discriminatory discharge. Jurisdiction is present. 28 U.S.C. § 1331.

This matter is before the court on defendant's motion for summary judgment, dkt. # 17, and defendant's unopposed motion to strike the affidavits of William Slawson and Charles Brown, dkt. # 32. For the reasons stated below, defendant's motion to strike will be denied as unnecessary and its motion for summary judgment will be granted. In brief, plaintiff has not met his burden to set out a prima facie case of discrimination because he failed to produce

evidence from which a jury could infer that he was similarly situated to any other employees at defendant's plant. In addition, even if plaintiff had made out his prima facie case, defendant would be entitled to summary judgment because there is no evidence in the record from which a jury could infer that defendant's stated reason for terminating plaintiff was a pretext to cover up unlawful discrimination.

■ Before turning to the facts, I will address defendant's motion to strike. Defendant argues that the court should strike the affidavits of William Slawson and Charles Brown, because they fail to comply with Fed.R.Civ.P. 56(e), which states that affidavits shall be "made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Defendant's motion will be denied as unnecessary because this court's procedures regarding summary judgment state clearly that the court will disregard proposed findings of fact not supported by admissible evidence.

From the parties' proposed findings of fact and the record, I find the following to be material and undisputed.

## UNDISPUTED FACTS

### A. *Plaintiff's Work History*

Plaintiff Antuan Pulliam is African-American. He began working for defendant General Motors at its facility in Janesville, Wisconsin in December 1996. At all times during his employment, plaintiff was an hourly wage employee covered by a collective bargaining agreement between defendant and the United Auto Workers union. On April 16, 1998, defendant terminated plaintiff's employment because of multiple unapproved absences. Defendant reinstated plaintiff on October 19, 1998, subject to a "last chance agreement," which required plaintiff to follow all

rules governing unionized employees at the plant and to participate in the GM–UAW Employee Assistance Program. Plaintiff understood that he would be terminated if he failed to comply with the requirements of the last chance agreement. One month later, defendant terminated plaintiff because he failed to participate in the Employee Assistance Program. Defendant reinstated plaintiff on February 8, 2000 subject to a second last chance agreement. As before, this agreement required participation in the Employee Assistance Program and compliance with all GM–UAW Shop Rules. One of these rules prohibited employees from leaving their departments or the plant during working hours without permission. Plaintiff understood that failure to comply with the terms of the agreement would result in his termination.

### B. *April 13, 2000 Altercation and Termination*

On April 13, 2000, David Dohner, an employee of defendant, was working near plaintiff with three or four other employees. Plaintiff overheard one of these employees say, "The nigger's daddy got him back." Pulliam Dep., dkt. # 16, at 47. (Plaintiff's father, Charles Brown, has been employed by defendant for over twenty years as an hourly wage worker.) Plaintiff did not report the comment to his supervisor or union committeeman. Dohner approached plaintiff several times to talk that day (plaintiff does not recall what Dohner said during these conversations). Each time, Dohner would return to his friends and laugh, but plaintiff could not hear what they were laughing about. Later in the day, Dohner approached plaintiff to talk. Plaintiff said, "Leave me the fuck alone," and as Dohner turned away, plaintiff heard him say "Nigger." *Id.* at 50–52. Plaintiff put his hands around Dohner's neck and pushed him backwards into a

cabinet. Dohner did not fight back. Plaintiff removed his hands from Dohner's neck, left his work area and went to the plant's front office.

While sitting in the front office, plaintiff heard laughter in an adjacent office. He became paranoid and began to believe that "everything was just a racist joke [at defendant's plant]." *Id.* at 55. Plaintiff's supervisor, Mike Scafe, tried to convince plaintiff not to leave the plant but was ultimately unsuccessful. Scafe convinced plaintiff to remain at the plant twice but plaintiff ignored his third attempt and left the plant. Plaintiff was charged with battery and disorderly conduct in connection with the altercation; he pleaded guilty to the disorderly conduct charge and served thirty days in jail.

Alina Soros, a labor relations representative for defendant, investigated the altercation. She spoke with plaintiff, Dohner, Scafe and several other employees in plaintiff's work area. Dohner and the other employees denied making or hearing any racial comment directed at plaintiff; they stated that plaintiff attacked Dohner after he complimented plaintiff on his work. On April 14, 2000, plaintiff reported to work the plant's front office and was told that he had been terminated because he had left the plant without permission. Plaintiff was never told who made the decision to terminate his employment.

## C. Disciplinary Decisions Involving White Employees

### 1. Vern Bakkum

In his capacity as a union representative at the Janesville plant, William Slawson witnessed a white employee named Vern Bakkum intoxicated and belligerent while on the job. Bakkum violated the shop rule prohibiting the use of alcohol at work on one occasion and was disciplined. Bakkum and plaintiff never worked in the same department or for the same supervisor.

### 2. Al Peterson

Slawson represented another employee of defendant, Al Peterson, in regard to Peterson's drinking on the job and alcohol-related absenteeism problems. Peterson worked in a different department from plaintiff and for a different supervisor. Peterson was disciplined each of the three times he was caught using alcohol at work.

### 3. Gary Christopherson

Gary Christopherson was another employee who had substance abuse problems. He was visibly intoxicated at work and was involved in several fights while at work. Slawson was called in to deal with these situations and was able to save Peterson's job on several occasions. Christopherson retired before plaintiff began working for defendant.

## D. Administrative Grievance

Defendant has corporate policies prohibiting discrimination and harassment and a procedure for filing complaints about discriminatory treatment. The collective bargaining agreement between defendant and the United Auto Workers union reiterates defendant's prohibition on discrimination and provides that employees may file grievances regarding alleged discriminatory treatment. Plaintiff never made a formal complaint regarding alleged discrimination at defendant's plant. Instead, plaintiff filed a complaint with the Wisconsin Department of Workplace Development on October 12, 2000. The department issued a "No Probable Cause" finding on March 21, 2001. On April 25, 2001, the United Auto Workers union sent plaintiff a letter informing him that the grievance related to his termination had been dropped because (1) plaintiff admitted to the conduct that led to his termination; (2) plaintiff violated his last chance agreement; and (3) the union did not think it would prevail on the griev-

ance. Plaintiff did not receive the letter because he no longer lived at the address to which the letter was mailed. Plaintiff did not provide either defendant or his union with a current address and he never attempted to contact defendant or the union about the status of his grievance.

### DISPUTED FACTS

The parties dispute whether Bakkum, Peterson and Christopherson ever worked under last chance agreements. Plaintiff contends that all three employees violated shop rules while subject to last chance agreements; defendant contends that none of those employees ever worked under such an agreement. In addition, the parties dispute whether Christopherson ever violated GM–UAW shop rules. Plaintiff contends that Christopherson was visibly intoxicated at work and was involved in several fights at work but defendant states that Christopherson never violated GM–UAW shop rules.

### OPINION

To prevail on a motion for summary judgment, the moving party must show that even when all inferences are drawn in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *McGann v. Northeast Illinois Regional Commuter Railroad Corp.*, 8 F.3d 1174, 1178 (7th Cir.1993). When the moving party succeeds in showing the absence of a genuine issue as to any material fact, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). The non-

moving party will not escape summary judgment in an employment discrimination case "simply because issues of motive or intent are involved" unless he produces evidence of discriminatory motive. *Cliff v. Bd. of School Commissioners of the City of Indianapolis, Indiana*, 42 F.3d 403, 409 (7th Cir.1994) (internal citations and quotations omitted).

■■■ Plaintiff contends that he was terminated by defendant because of his race in violation of 42 U.S.C. § 1981, which prohibits discrimination on the basis of race in the making, enforcing and terminating of contracts, including employment contracts. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Section 1981 protects employees with contracts for a specified duration as well as at-will employees. *Walker v. Abbott Laboratories*, 340 F.3d 471 (7th Cir.2003). Defendant presents two arguments in support of its motion for summary judgment. First, under the burden-shifting scheme used frequently in employment discrimination cases, plaintiff has not established a prima facie case of discrimination and cannot show that defendant's legitimate, non-discriminatory reason for terminating plaintiff was pretextual. Second, plaintiff's claim is barred by the doctrine of laches. Because I agree that plaintiff has not established his prima facie case and cannot show that defendant's reason for terminating him is a pretext for discrimination, I will not discuss defendant's argument regarding laches.

■■■ The standard for imposing liability on a defendant is essentially the same with respect to § 1981, § 1983 and Title VII. Under Title VII, a plaintiff establishes an unlawful employment practice when he demonstrates that his race was a "motivating factor" in the employer's decision. 42 U.S.C. § 2000e–2(m); *see also Venters v. City of Delphi*, 123 F.3d 956,

973 n. 7 (7th Cir.1997). In other words, the plaintiff must prove that his race was one of the reasons that his employer took adverse action against him. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 250, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). A plaintiff may use direct or circumstantial evidence to meet this burden. *Desert Palace v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). Claims of race discrimination under § 1981 may be analyzed in the same manner. *Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (applying burden-shifting framework to claims under § 1981); *Patton v. Indianapolis Public School Board,* 276 F.3d 334, 338 (7th Cir.2002) ("Discrimination claims under both Title VII and § 1981 are analyzed in the same manner"); *Malacara v. City of Madison,* 224 F.3d 727, 729 (7th Cir.2000) (using same framework to analyze claims under § 1981, § 1983 and Title VII).

 Neither party argues that any direct or circumstantial evidence of discrimination exists in this case (and none appears on the record because the proposed facts do not identify the person or persons who made the final decision to terminate plaintiff's employment). Instead, the parties focus on the burden-shifting method of proof established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). That method of proof requires plaintiff to establish a prima facie case of discrimination by showing that (1) he was a member of a protected class; (2) he was meeting his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) defendant treated similarly situated employees outside the protected class more favorably. *Gordon v. United Airlines, Inc.,* 246 F.3d 878, 886 (7th Cir.2001); *Vakharia v. Swedish Covenant Hospital,* 190 F.3d 799, 806 (7th Cir. 1999). If plaintiff meets his burden, a presumption of discrimination arises and the burden of production shifts to defendant to produce a legitimate, non-discriminatory reason for the adverse action. *Davis v. Con–Way Transp. Cent. Express, Inc.,* 368 F.3d 776, 784 (7th Cir.2004). After defendant produces a non-discriminatory reason for the adverse action, plaintiff must present evidence that would allow the trier of fact to find the employer's reason pretextual. *Peele v. Country Mutual Ins. Co.,* 288 F.3d 319, 326 (7th Cir. 2002).

### A. *Prima Facie Case*

Defendant does not dispute that plaintiff is a member of a protected class or that he suffered an adverse employment action. Rather, defendant argues that plaintiff cannot establish a prima facie case because he cannot show that his performance met defendant's legitimate job expectations and because he cannot identify any similarly situated non-minority employees that were treated more favorably.

#### 1. *Legitimate job expectations*

Defendant points to plaintiff's "long history of misconduct" and argues that he was not meeting defendant's legitimate expectations. Dft.'s Br., dkt. # 18, at 3. Defendant notes that plaintiff was re-hired twice subject to last chance agreements and that he knew that he could be terminated if he failed to follow them. Further, defendant argues that one of the GM–UAW shop rules plaintiff was bound to follow prohibited employees from leaving their departments or the plant during working hours without permission and that plaintiff's failure to abide by this rule on April 13, 2000 led to his termination. Plaintiff does not dispute any of this; he admits that he was told multiple times by Mike Scafe, his supervisor, that if he left the plant he could be fired. Armed with

that knowledge, plaintiff left the plant. These facts are not in dispute, and ordinarily they would foreclose plaintiff from establishing a prima facie case of discrimination. *Morris v. Chicago Transit Authority,* No. 00 C 740, 2004 WL 527085 (N.D.Ill. Mar. 11, 2004) (employee did not meet employer's legitimate expectations where he continued to accumulate unexcused absences while on probation); *Dent v. Bestfoods,* No. 02 C 7922, 2003 WL 22025008 (N.D.Ill. Aug. 27, 2003) (employee who violated provision of last chance agreement by arguing with supervisor not meeting employer's legitimate expectations).

■ But plaintiff does not argue that there were no legitimate grounds to terminate his employment. Instead, plaintiff appears to argue that defendant disciplined him more severely than other employees who broke rules while subject to last chance agreements. In general, a plaintiff must show that he was meeting his employer's legitimate expectations, but two recent cases have carved out a narrow exception to this requirement. *Curry v. Menard, Inc.,* 270 F.3d 473 (7th Cir.2001); *Flores v. Preferred Technical Group,* 182 F.3d 512 (7th Cir.1999). The exception covers situations in which a former employee concedes that his employer had legitimate grounds to terminate him and argues that he was singled out for more severe discipline than other employees because of race, sex, national origin, etc. In this situation, it makes little sense to examine whether that employee was meeting the employer's legitimate expectations. In *Flores,* 182 F.3d 512, a group of employees gathered to protest changes in a workplace rule. The plaintiff participated in the protest and was fired because she was identified as the leader of the "illegal work stoppage"; several other employees who took part in the protest were not fired. *Id.* at 514. Plaintiff sued, claiming the defendant had fired her because she was

Hispanic. Defendant argued that plaintiff was not meeting its legitimate expectations because she participated in the protest, but the court stated that the real issue in the case was "whether Flores was singled out for discipline because she is Hispanic. Therefore ... Flores does not have to show that she was meeting her employer's legitimate expectations in order to establish a *prima facie* case of discrimination." *Id.* at 515.

A similar situation existed in *Curry,* 270 F.3d 473. In that case, a cashier was terminated allegedly because of repeated discrepancies in her cash drawer. She sued under Title VII, alleging that sixteen non-black cashiers would have been suspended or terminated during the same time period had the disciplinary policy regarding cash drawer discrepancies been strictly enforced. The court bypassed the legitimate expectations prong of the prima facie inquiry because the plaintiff's theory was that she had been singled out for discipline because of her race. *Id.* at 477–78. In the present case, plaintiff's theory mirrors that advanced by the plaintiffs in *Flores* and *Curry;* thus it is unnecessary to consider whether he was meeting defendant's legitimate expectations. Therefore, I will move to the fourth prong of the prima facie inquiry and consider whether defendant treated similarly situated non-black employees more favorably.

2. *Similarly situated employees*

■ A plaintiff attempting to show that similarly situated employees were treated more favorably must show that the employees are directly comparable to him in all material aspects. *Herron v. DaimlerChrysler Corp.,* 388 F.3d 293, 300 (7th Cir.2004). In a case in which a plaintiff contends that he was disciplined more harshly than other employees because of a prohibited reason, he must show "that he

is similarly situated with respect to performance, qualifications, and conduct." *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617 (7th Cir.2000). Moreover, the plaintiff must show that the decision maker responsible for the adverse action also disciplined the similarly situated employees, *Little v. Illinois Dept. of Revenue*, 369 F.3d 1007, 1012 (7th Cir.2004), and that he and the other employees "were subject to the same workplace rules, and engaged in similar conduct, but nonetheless received disparate treatment for no apparent legitimate reason." *Adams v. Wal–Mart Stores, Inc.*, 324 F.3d 935, 940 (7th Cir. 2003) (citing *Peele*, 288 F.3d at 330). "Requiring that the plaintiff establish these similarities is simply common sense, as 'different employment decisions, concerning different employees, made by different supervisors ... sufficiently account for any disparity in treatment, thereby preventing an inference of discrimination.'" *Snipes v. Illinois Dept. of Corrections*, 291 F.3d 460, 463 (7th Cir.2002) (quoting *Radue*, 219 F.3d at 618).

■■■ Plaintiff has failed to identify any employees who were similarly situated to him. Chief among plaintiff's problems is the fact that he does not know who made the decision to terminate his employment. Without this crucial piece of information, plaintiff cannot analogize his situation to that of other employees. Further, plaintiff has failed to identify a non-black employee at defendant's plant who was subject to a last chance agreement, left the plant without permission and was not terminated. With respect to the employees he did identify, plaintiff has not introduced evidence that they had similar positions, engaged in similar conduct or worked in the same department or under the same supervisor. Bakkum and Peterson violated a shop rule prohibiting the use of alcohol at the plant; even if this behavior were analogous to leaving the plant without permission, it would not be enough to show a similar

situation. *Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 771 (7th Cir.1994) ("More evidence than the mere fact that other employees were not discharged for at best arguably similar misconduct must be demonstrated to sustain a charge of intentional discrimination."). In addition, plaintiff has failed to introduce evidence that the person who made the decision to discipline these employees is the same person who terminated his employment. The fact that the white employees may have been subject to last chance agreements when they violated work rules is not enough for a jury to find that plaintiff was similarly situated to these employees. Therefore, plaintiff has failed to establish a prima facie case of discrimination and defendant is entitled to summary judgment.

### B. *Pretext*

■■■ Even if I could conclude that plaintiff had met his burden of showing a prima facie case of discrimination, defendant would be entitled to summary judgment because plaintiff has not introduced any evidence from which an inference could be drawn that the stated reason for his termination is pretextual. Defendant argues that plaintiff's violation of his last chance agreement provided a legitimate reason for his termination. This is sufficient to meet its burden of production and shift the burden back to plaintiff to prove pretext. Pretext means more than just a decision made in error or in bad judgment; it means a lie or a phony reason for the action. *Grube v. Lau Industries*, 257 F.3d 723, 730 (7th Cir.2001); *Wolf v. Buss (America), Inc.*, 77 F.3d 914, 919 (7th Cir. 1996). A district court may not "second-guess an employer's policies that are facially legitimate." *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1035 (7th Cir.1999). Because the correctness or desirability of the reason for plaintiff's termination is not relevant, *Grayson v. O'Neill*,

308 F.3d 808, 820 (7th Cir.2002), plaintiff must show that defendant's reason (1) is factually baseless; (2) was not the actual motivation behind defendant's decision to terminate plaintiff; or (3) was insufficient to motivate the decision. *Baron v. City of Highland Park,* 195 F.3d 333, 341 (7th Cir.1999).

 Defendant argues that plaintiff cannot show pretext for several reasons. First, defendant re-hired plaintiff twice before terminating him for violating shop rules. Second, the racial comments made by David Dohner, a co-worker, are not attributable to defendant. Finally, defendant notes that plaintiff has produced no evidence that the laughter plaintiff heard while in the front office came from the person or persons who decided to terminate him or that the laughter was directed at him. In response, plaintiff brings forth no new evidence on the question of pretext; rather, he relies on the fact that four white employees were not terminated after violating workplace rules. This evidence falls far short of raising an issue as to pretext. By admitting that he violated a shop rule with the knowledge that the violation provided adequate grounds for termination under the terms of his last chance agreement, plaintiff is precluded from arguing that defendant's proffered reason was factually baseless or insufficient to support his termination. Further, because plaintiff has not identified the person or persons who made the decision to terminate his employment, his contention that he was terminated because of his race is based on nothing more than unsupported speculation, which is not enough to survive a motion for summary judgment. *McDonald v. Village of Winnetka,* 371 F.3d 992, 1001 (7th Cir.2004) ("Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.").

## ORDER

IT IS ORDERED that defendant General Motors' motion to strike the affidavits of William Slawson and Charles Brown, dkt. # 32, is DENIED as unnecessary. FURTHER, IT IS ORDERED that defendant's motion for summary judgment, dkt. # 17, is GRANTED. The clerk of court is directed to enter judgment for defendant and close this case.