**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

VERNET P. BOONE,
Plaintiff-Appellant,

v.

DANIEL S. GOLDIN, in his official
capacity as Administrator, National
Aeronautics and Space

Administration,
Defendant-Appellee,

and

CHARLES M. SOUTHALL, III; WAYNE
C. HOGGE; BILLY W. BEASLEY,
Defendants.

No. 98-2085

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
Henry C. Morgan, District Judge.
(CA-97-76-4)

Argued: April 9, 1999

Decided: May 17, 1999

Before HAMILTON, MOTZ, and TRAXLER, Circuit Judges.

_____

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Hamilton and Judge Traxler joined.

_____

**COUNSEL**

**ARGUED:** Sa'ad El-Amin, EL-AMIN & CRAWFORD, Richmond,
Virginia, for Appellant. Anita K. Henry, Assistant United States

Attorney, UNITED STATES ATTORNEY'S OFFICE, Norfolk, Virginia, for Appellee. **ON BRIEF:** Beverly D. Crawford, EL-AMIN & CRAWFORD, Richmond, Virginia, for Appellant. Helen F. Fahey, United States Attorney, UNITED STATES ATTORNEY'S OFFICE, Norfolk, Virginia, for Appellee.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Vernet P. Boone brought this action, alleging that her employer, the National Aeronautics and Space Administration (NASA), and individual supervisors employed by NASA violated the antidiscrimination and anti-retaliation provisions of Title VII of the Civil Rights Act of 1964 by reassigning her to a different position within NASA. Because the reassignment does not qualify as an adverse employment action, we affirm the district court's grant of summary judgment to NASA.

I.

Boone, an African-American civilian employee, works as an electrical engineering technician at NASA's Langley Research Center in Hampton, Virginia, where she has been employed since 1978. For much of her time at NASA Boone was employed in the Acoustics Research Laboratory. In 1994 she filed an administrative claim asserting that she had been denied a promotion to GS-11 status because of her race and gender. The following year she was promoted, and she then entered into a settlement agreement with NASA.

A year later, on June 25, 1996, NASA informed Boone that it was reassigning her to the Electrical Control Systems' 14-foot-by-22-foot wind tunnel. She responded by filing a second administrative claim in which she charged inter alia that this reassignment breached the settlement agreement. When the matter was not resolved to her satisfaction, in June 1997 Boone filed this action under Title VII alleging that NASA and certain supervisors had reassigned her to the wind tunnel for discriminatory and retaliatory reasons. See 42 U.S.C.A.

2

§§ 2000e-2, 2000e-3 (West 1994). She claims that poor working conditions in the wind tunnel made it an undesirable place to work, and that transfer to it thus constituted a significant or material change in her working conditions sufficient to rise to the level of an adverse employment action.

The district court granted summary judgment to NASA, reasoning that the reassignment did not constitute an adverse employment action. The court explained that the reassignment caused Boone no reduction in grade, salary, benefits, level of responsibility, or title. In fact, while her position in the lab was not one commensurate with her GS-11 salary, the new position in the wind tunnel was; Boone had been paid as a GS-11 for her work in the lab, but that position only required a GS-10 salary and her replacement received a GS-10 salary. Moreover, Boone failed to present any evidence that the reassignment would reduce her opportunities for future reassignments or promotions, and NASA offered evidence to the contrary, suggesting that because of the wind tunnel's importance to its operations, the reassignment would better position Boone for future promotions. Finally, the court noted that Boone was unable to offer substantial evidence of poor working conditions in the wind tunnel.

II.

We must affirm. Although Boone may have experienced increased stress in the new job (according to her deposition testimony, this was due chiefly to its unfamiliarity and its more stringent deadlines), she did not allege discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion -- the typical requirements for a showing of an "adverse employment action" that can support a Title VII claim. See Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (stating that inquiries into adverse employment actions have consistently focused on whether there has been discrimination in such ultimate decisions as hiring, granting leave, discharging, promoting, and compensation).

We recognize that the Supreme Court has recently suggested that Title VII liability can arise from a "tangible employment action," which the Court defined to include not only "hiring, firing, failing to promote, . . . [and] significant change in benefits," but also "reassign-

3

ment with significantly different responsibilities." <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 118 S. Ct. 2257, 2268 (1998) (discussing "tangible employment action" as trigger for employer's strict liability under Title VII for supervisor's discriminatory acts); <u>see also Reinhold v. Commonwealth of Virginia</u>, 151 F.3d 172, 175 (4th Cir. 1998). In light of the clear precedent indicating that Title VII awards damages "only against employers who are proven to have taken adverse employment action" for a discriminatory reason, <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 523-24 (1993), and based on our certainty that Congress did not intend Title VII to provide redress for trivial discomforts endemic to employment, however, we conclude that reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect on her. Boone has failed to forecast evidence that could satisfy this requirement.

As the trial court rightly noted, a change in working conditions may be a factor to consider in assessing whether a reassignment qualifies as an adverse employment action that could give rise to Title VII liability. Boone's own deposition testimony, however, directly refuted three of her four alleged problems with the conditions in the wind tunnel. Her remaining assertion was that the work in the wind tunnel was unfamiliar and more stressful -- hardly notable complaints about a reassignment, particularly a reassignment to a position commanding a higher salary level and in a high-priority sector of the employer's business. Absent evidence that a new position is significantly more stressful than the last, vague allegations of stress resulting from reassignment cannot support a claim of discrimination under Title VII.

Nor are we persuaded by Boone's contention that the trial court erred in refusing to consider the allegations about poor working conditions articulated in the affidavits of three co-workers. First, we do not agree that the trial court ignored the allegations made in the affidavits. The court recounted in detail the "litany of poor working conditions" described in the affidavits, and then concluded that neither Boone nor her three affiants alleged conditions sufficient to show an adverse employment action.

Moreover, the affidavits provide no support for Boone's claim that she suffered an adverse employment action. Boone never relied on the

4

poor working conditions described in the affidavits-- not in her complaint, in her deposition testimony, or even in her response to NASA's motion for summary judgment. Nor did the affiants mention any of the difficult working conditions on which Boone did rely. Perhaps this was because, unlike Boone, none of the affiants worked as an electrical engineering technician in the wind tunnel.

One affiant was a student intern who spent only one week in the wind tunnel. The other two did not specify the duties that they performed or where they worked in the tunnel, so it is impossible to determine whether they worked under the same conditions as Boone. The single affiant who alleged disparate treatment in the nature of a disproportionate assignment of African-American mechanical engineering technicians to the wind tunnel did not offer any observations pertinent to disparate treatment of electrical engineering technicians, like Boone. For these reasons, the affidavits provide no assistance to Boone.

III.

In sum, absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position. Because Boone has failed to allege that she suffered any adverse employment action, or to forecast any evidence of this, she cannot prevail on her claims of discrimination or retaliation.

Accordingly, the judgment of the district court is

AFFIRMED.

5