Ann G. SPAIN, Plaintiff,

v.

CITY OF WINSTON–SALEM, Joel Michael Newsome, Individually and in his official capacity as Sergeant for the Winston–Salem Police Department, Defendants.

No. 1:00CV957.

United States District Court, M.D. North Carolina.

March 25, 2002.

Joseph L. Anderson, Katherine Flynn Henry, Anderson Korzen & Associates, P.C., Kernersville, NC, for Plaintiff.

Gusti W. Frankel, Alison Raney Bost, Womble Carlyle Sandridge & Rice, Winston–Salen, NC, William L. Hill, Moss Mason & Hill, Greensboro, NC, for Defendants.

## MEMORANDUM OPINION

OSTEEN, District Judge.

Plaintiff Ann G. Spain filed this suit alleging several causes of action arising from her previous employment with and resignation from the Winston–Salem Police Department. The case is currently before the court on Defendants' Motion for Summary Judgment. For the reasons set forth below, Defendants' motion will be granted.

## I. FACTUAL BACKGROUND [1]

Plaintiff began working with the Winston–Salem Police Department in 1991 as a patrol officer. She later became a K–9 officer assigned to work with a trained police dog. Plaintiff received satisfactory performance reviews throughout her employment, as well as numerous accolades from the community and her superiors for her work. She was also subject to several Internal Affairs investigations for violations of departmental directives.

Three of these investigations, all of which happened during the last several months of her employment, seem to be of the most concern to Plaintiff. Each of the three investigations was initiated after Defendant Sergeant Joel Newsome was transferred to her unit as the K–9 coordinator in March or April 1999. Newsome had previously been assigned to Internal Affairs.

The first investigation was initiated by Plaintiff's supervisor, Sergeant Roger Lee Nelson. The investigation concerned an altercation between Nelson and Plaintiff and was eventually sustained. The second investigation concerned a complaint made by a citizen about Plaintiff's behavior at the veterinarian's office. That complaint was eventually dismissed as unfounded. The third investigation was initiated by Sergeant Cobb of the Internal Affairs department. The incident began when Plaintiff lodged a hostile environment complaint with the Internal Affairs department. In the course of investigating this complaint, Sergeant Cobb initiated a separate complaint against Plaintiff, this one for insubordination and lack of truthfulness, which was eventually sustained.

On September 3, 1999, Plaintiff tendered her resignation, effective September 10. At that time, none of the three investigations listed above had reached a conclusion. The resignation letter listed only "personal reasons" as Plaintiff's motive for resigning. However, on January 12, 2000, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) alleging discrimination based on sex. The EEOC issued Plaintiff a Notice of Right to Sue on September 18, 2000. Plaintiff filed the complaint in this case on September 22, 2000, naming the City of Winston–Salem, Sgt. Newsome, and Sgt. Nelson, as defendants. Nelson was later dismissed from the case with prejudice. Defendants have moved for summary judgment as to all of Plaintiff's remaining claims.[2]

---

1. Plaintiff is reminded of Local Rule 7.2(a)(2) which states that briefs should contain "[a] concise statement of the facts." In the section of Plaintiff's opposition brief entitled "Statement of Facts," Plaintiff gives page after page of block quotes, mostly from affidavits, which contain almost no facts but rather the affiants' unsupported opinions and conclusions. Most of these quotes, as Plaintiff well knows, are not even admissible as evidence and certainly do not constitute facts.

2. In addition to the claims fully discussed in this opinion, Plaintiff also asserted claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent hiring and retention. Defendants moved for summary judgment as to these claims, and Plaintiff did not argue these claims in her response. Therefore, pursuant to Local Rule 56.1(e), the court will consider Defendants' motion uncontested and grant summary judgment as to those claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where an examination of the pleadings, affidavits and other proper discovery materials before the court indicate that there exists no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Where the evidence before the court could lead a reasonable juror to find for the nonmovant, a genuine issue of material fact exists and summary judgment is improper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). All of the facts must be taken in the light most favorable to the nonmoving party and the burden is on the moving party to establish that no material factual issues exist.

## III. TITLE VII CLAIM

### A. Retaliation

■ In her complaint, Plaintiff titles her first claim of relief as "Violation of 42 USC § 2000e, et al." (Compl. at 8.) She then goes on to allege that "Newsome ... and City have committed various acts and followed various policies and practices which discriminated against plaintiff because of her sex, in violation of 42 U.S.C. § 2000e–3." (*Id.*) The flaw here is that 42 U.S.C. § 2000e–3 proscribes retaliation, i.e., discrimination by employers precipitated by the employee's opposition to "any practice made an unlawful employment practice by this subchapter...." As stated previously, Plaintiff's EEOC complaint listed only discrimination based on sex, and not retaliation, as the cause of her complaint. Therefore, Plaintiff cannot state a claim for retaliation because she failed to exhaust her administrative remedies. *See Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 148 (4th Cir.1999) ("It is axiomatic that a claimant under Title VII must exhaust his administrative remedies by raising his claim before the EEOC.").

### B. Sex Discrimination

■ The proper code section for Plaintiff's claim of discrimination based on sex is 42 U.S.C. § 2000e–2(a)(1), which prohibits sex discrimination "with respect to [her] compensation, terms, conditions, or privileges of employment." There are two avenues available to show discrimination. Plaintiff may provide either direct evidence that she was discriminated against, or she may opt for the burden shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, Plaintiff must show a *prima facie* case of discrimination, which then shifts the burden to Defendants to articulate a legitimate nondiscriminatory reason for the allegedly offending acts. If Defendants do provide such a reason, Plaintiff must then provide evidence that the legitimate nondiscriminatory reason is a mere pretext for discrimination.

■ Plaintiff does not contend that she has provided direct evidence of discrimination, but rather attempts to establish a *prima facie* case. Plaintiff therefore must show that (1) she is a member of a protected class, (2) she has suffered an adverse employment action, (3) she was performing up to her employer's expectation, and (4) her position either remained open or was filled by someone not a member of her protected class. *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999). Defendants assert that Plaintiff has failed to show the second prong of the *prima facie* case, that she suffered an adverse employment action.

■ The requirement that an alleged victim of discrimination must have suffered an adverse employment action exists be-

cause Title VII was never intended to provide a remedy for "trivial discomforts endemic to employment." *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir.1999). To determine whether any particular incident qualifies as an adverse employment action, the focus is often on "whether there has been discrimination in what could be characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir.1981). However, an adverse employment action need not necessarily be an ultimate employment decision. Other intermediate employment decisions may qualify as adverse employment actions depending on the circumstances. *See id.* (stating that some mediate decisions may qualify as adverse employment actions, such as entry into training programs); *see also Boone*, 178 F.3d at 256 (stating that reassignment can be an adverse action if it has a "significant detrimental effect" on the plaintiff).

■ Plaintiff advances two arguments to show that she suffered an adverse employment action. First, Plaintiff characterizes the Internal Affairs investigations initiated after Newsome transferred to Plaintiff's department as adverse employment actions. This argument is fatally flawed. The suggestion that Newsome's arrival as the K–9 coordinator precipitated Plaintiff's Internal Affairs problems is belied by the fact that Plaintiff was no stranger to Internal Affairs investigations before Newsome took over as coordinator. Her record prior to Newsome's arrival includes three internal complaints for violating department directives, all of which were sustained; a citizen complaint for lack of truthfulness which was sustained; and an internal complaint for insubordination which was not sustained. (Defs.' Reply Ex. A.)

Further, and more damaging to Plaintiff's claim, absolutely no evidence has been produced to show that Newsome had anything to do with the three investigations initiated after his transfer. Quite the contrary, the evidence clearly shows that Sgt. Nelson initiated the first complaint, a private citizen initiated the second, and Sgt. Cobb initiated the third. Newsome has not been tied to any of these investigations. Therefore, while Plaintiff states that Newsome subjected her and other female subordinates to "Internal Affairs investigations and abuses," she has completely failed to produce any admissible evidence to support that statement. (Pl.'s Br. Opp'n Summ. J. at 14.)

Even if we do not consider Nelson's involvement, Plaintiff has failed to produce evidence that she was subject to any improper Internal Affairs investigations. She offers the bald statement that "she was subjected to numerous, frivolous investigations, which were neither reasonable or justifiable, and which substantially altered the conditions of her employment." (*Id.* at 13.) However, a properly initiated Internal Affairs investigation cannot be considered an adverse employment action for the purposes of meeting Plaintiff's *prima facie* case. For Plaintiff to show that the Internal Affairs investigations were frivolous or unreasonable as she alleges, she must attempt to show that they were initiated with no basis or with some ulterior motive. For example, she could attempt to show that she was investigated for offenses that male officers were not investigated for. Astoundingly, Plaintiff makes no attempt to attack the merits of any of the investigations in her opposition brief.

In an apparent attempt to show that Internal Affairs investigations were used more often against women than men, Plaintiff offers affidavits from three other

women who had been subject to investigations. The three accounts show little other than the unextraordinary fact that the three women also disliked their experiences with Internal Affairs. They do not show that investigations were more likely to be used against women than men, nor do they show that Newsome investigated or initiated investigations against women more than men for similar conduct. The instances simply do not advance Plaintiff's sex discrimination claim.[3]

 Second, Plaintiff argues that she was constructively discharged, which would definitely be an adverse employment action. To show constructive discharge, Plaintiff must show that she was subjected to "intolerable working conditions in a deliberate effort to force [her] to resign." *Carter v. Ball,* 33 F.3d 450, 459 (4th Cir.1994). To show deliberateness, she must show "actions that single out a plaintiff for differential treatment." *Id.* To show that her working conditions were intolerable, Plaintiff must show that a reasonable person in her position would have felt compelled to resign. *Taylor v. Virginia Union University,* 193 F.3d 219, 237 (4th Cir.1999). However, "[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Carter,* 33 F.3d at 459.

 Plaintiff has failed to produce any evidence that she was treated unfairly or that she was treated differently from any other employee. She does point to two affidavits that purport to show Newsome's intent to fire Plaintiff. Both are hearsay of very questionable admissibility. Even accepting this evidence, there is no evidence that Newsome ever took any action

to carry out his alleged intent. Again, the evidence shows that Newsome did not initiate any of the investigations that Plaintiff claims made her working conditions intolerable. Likewise, the evidence does not show that the investigations being conducted when Plaintiff resigned were meritless.

Plaintiff has also failed to show that her working conditions were intolerable, or that a reasonable person would have felt compelled to resign. She obviously felt unfairly criticized, but that is not sufficient. Again, Plaintiff relies on affidavits, her own and of two other officers. As for her own affidavit, it does not help her cause, as the court is already aware of Plaintiff's allegation that her working conditions were intolerable. The second affidavit is from Officer Chris Spain, who happens to be Plaintiff's husband. He, unsurprisingly, feels that anyone in Plaintiff's position would have felt compelled to resign. He also asserts that Newsome used the Internal Affairs investigation process unfairly against women but not against men. Again, no evidence other than Officer Chris Spain's opinion is given. Finally, Plaintiff points to the affidavit of Officer Dan Seaman, who also states that he or anyone else would have felt compelled to resign under the conditions Plaintiff was subjected to. Again, no evidence other than Seaman's opinion is given.

Plaintiff's own affidavit is particularly troubling to the court for reasons other than its lack of evidentiary value. In her deposition, Plaintiff was directly asked whether she had ever complained to Nelson or anyone else in the Winston–Salem Police Department that she was being discriminated against based on her sex. She responded that she had not. (Spain Dep. at 106–7.) Plaintiff contradicts her deposi-

---

**3.** The court makes no finding as to whether the evidence of these three incidents would be admissible.

tion testimony in her affidavit, which states that she complained monthly to Sgt. Nelson about Newsome's "harassment" of her and that she had complained on one occasion to an Internal Affairs investigator, Dennis Scales.[4] (A. Spain Aff. at ¶¶ 15, 17, attached to Pl.'s Br. Opp'n Summ.J.) When Defendants complained about this contradiction, Plaintiff's counsel sent Defendants a copy of an unsigned letter that had purportedly been faxed to Defendants. The letter informed Defendants of the new facts remembered by Plaintiff and invited them to reopen her deposition, if they saw fit. Defendants have no record of this fax, and they requested a copy of the confirmation receipt from Plaintiff's counsel, who responded that they did not have the fax confirmation for that transmittal.

■ The reason that this disturbs the court is obvious, as it appears that Defendants were never notified of the change in Plaintiff's testimony. This causes logical speculation. While it is surely possible for a fax confirmation to be lost, the facts here cast serious doubt on that scenario. Nevertheless, Plaintiff cannot point to inconsistencies in her own testimony to escape summary judgment. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 n. 7 (4th Cir.2001).

■ Even with her affidavit, Plaintiff has failed to provide any evidence to support her *prima facie* Title VII claim. She has not provided evidence that the investigations being conducted at the time she resigned were unfair, unwarranted, or dis-

parately applied. She has not provided evidence that she was constructively discharged.[5] She has simply failed to provide any evidence that she suffered an adverse employment action, as is required to establish a *prima facie* case. Summary judgment will be granted to Defendants on this claim.

## IV. SECTION 1983

■ Plaintiff asserts a § 1983 claim for violation of her constitutional right of equal protection. However, as discussed above, Plaintiff has failed to show any constitutional right that was violated. Simply put, the evidence shows that she was being investigated for three different incidents, and that during the pendency of those investigations, she voluntarily resigned. She has failed to show that the investigations were unjustified and has failed to show that she was constructively discharged. Most importantly for the § 1983 claim, she has failed to produce evidence that she was discriminated against because of her sex. On this record, Plaintiff has simply not suffered a constitutional injury that would allow her to recover under § 1983. *See Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994) ("Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." (internal quotations omitted) (citation omitted)).

---

4. It bears noting that Plaintiff was not referring to sexual harassment, but rather that "[Newsome] was accusing me of all kinds of things, making my life hard, accusing me of all kinds of things, (sic) trying to make me fail, trying to create something he could investigate me for, and he did not do this to the men in his chain of command." (A. Spain Aff. at ¶ 15, attached to Pl.'s Br. Opp'n Summ.J.)

5. Plaintiff also asserts a state law claim for constructive discharge. This claim fails because the tort of constructive discharge has not been recognized in North Carolina in the employment-at-will context. *DeWitt v. Mecklenburg County*, 73 F.Supp.2d 589, 599 n. 6 (W.D.N.C.1999). Plaintiff cites *Doyle v. Asheville Orthopaedic Assocs.*, 557 S.E.2d 577 (N.C.App.2001). That case is in apposite as it deals with an employment contract.

## V. STATE CONSTITUTIONAL CLAIM

Plaintiff states a claim under the North Carolina Constitution for violation of her equal protection rights. Plaintiff claims that she had no adequate state remedy available to her, because the Winston–Salem grievance policy required her to complain first to Newsome. This is simply incorrect, as the copy of the policy supplied by Plaintiff plainly states that employees are invited to complain to their supervisors or to higher levels of management, if needed.[6] Plaintiff's deposition clearly states that she did not take advantage of the grievance provisions. Plaintiff simply may not claim that the grievance procedure was fatally flawed when she cannot show that she attempted to avail herself of it. *See Corum v. University of North Carolina,* 330 N.C. 761, 413 S.E.2d 276, 289 (1992) (permitting a state constitutional claim only in the absence of an adequate state remedy).

## VI. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment will be granted.

A judgment in accordance with this memorandum opinion will be entered contemporaneously herewith.

### JUDGMENT

For the reason set forth in the memorandum opinion entered contemporaneously herewith,

IT IS ORDERED that Defendants' Motion for Summary Judgment [20] is granted.

---

6. The Winston–Salem Police Department policy manual states that "employees are encouraged to present complaints or grievances to immediate supervisors and to higher levels of supervision and in doing this shall have freedom from discrimination, coercion, restraint or reprisal." (Pl.'s Br. Opp'n Summ.J.Ex. 3.)