**Jerry Neal BRAND, Plaintiff,**

v.

**NORTH CAROLINA DEPARTMENT OF CRIME CONTROL AND PUBLIC SAFETY; and North Carolina State Highway Patrol, Defendants.**

**No. CIV.1:03 CV 00966.**

United States District Court, M.D. North Carolina.

Dec. 15, 2004.

Angela Newell Gray, Gray Newell Johnson & Blackmon, LLP, Winston–Salem, NC, for Plaintiff.

Stacey T. Carter, N.C. Department of Justice, Crime Control Section, Raleigh, NC, for Defendants.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Jerry Neal Brand ("Plaintiff") filed this action against the North Carolina Department of Crime Control and Public Safety and the North Carolina State Highway Patrol (collectively "Defendants") alleging race discrimination based on disparate treatment, retaliation, and hostile work environment in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Pursuant to Federal Rule of Civil Procedure 56, Defendants moved for summary judgment.[1] For the following reasons, the court will grant in part and deny in part Defendants' motion for summary judgment.

## FACTS

Plaintiff, an African–American male, began working as a State Trooper for the North Carolina State Highway Patrol on June 1, 1989. He was assigned to Troop D

---

1. Defendants are admonished to be mindful of the provisions of Local Rule 7.1(a).

in Guilford County in April 1992. On November 1, 1992, Plaintiff received a promotion to the position of Senior Trooper. On December 1, 1995, Plaintiff received a promotion to the position of Master trooper. At all times relevant to the matter before the court, Plaintiff worked under the supervision of First Sergeant Tommy Dean Hurley.[2]

In January 2002, Plaintiff requested and received education leave to take one class while fulfilling his duties as a trooper. Plaintiff alleges that First Sergeant Hurley "harassed [Plaintiff] and made it difficult for him to attend class." (Pl.'s Resp. Defs.' Mot. Summ. J. at 3.) Plaintiff alleges that he was routinely assigned calls while attending or en route to class despite the availability of others to take the calls, whereas other troopers enrolled in classes did not receive calls while attending or en route to class. Plaintiff also alleges that he was wrongly admonished by First Sergeant Hurley for allegedly refusing to take a call because of a class in April 2002.

In July 2002, Plaintiff applied for educational leave with pay to attend school in the fall semester beginning on August 28, 2002. Plaintiff indicated on his request that the class was not taught during his off-duty time. In a purported effort to expedite Plaintiff's leave application, First Sergeant Hurley contacted the school and learned that the class Plaintiff sought to take was available during Plaintiff's off-duty hours. Accordingly, First Sergeant Hurley denied Plaintiff's request on August 21, 2002.

On July 28, 2002, Plaintiff failed to answer or respond to the Troop D Communi-

cations Center for approximately thirty-eight minutes. Plaintiff claims that the failure was due to malfunctioning radio equipment in his patrol car and presents an equipment report detailing the repair and replacement history of the radio at issue.

On August 28, 2002, Plaintiff remained in class thirty minutes longer than entitled. Plaintiff advised Sergeant Williams of the delay, and Sergeant Williams advised Plaintiff to work thirty minutes longer to compensate for Plaintiff's tardiness.[3] Plaintiff alleges that such accommodations for other troopers were not uncommon. First Sergeant Hurley confronted Plaintiff and admonished him for taking overtime without permission from the appropriate supervisor. Plaintiff responded by saying that he felt that First Sergeant Hurley's admonishment was discriminatory based on Plaintiff's race.

Plaintiff filed an internal grievance against First Sergeant Hurley on September 5, 2002, with Captain Fleetwood and Captain Moody. Plaintiff alleged racial discrimination against African–American troopers by First Sergeant Hurley and the Troop D Radio Communications personnel. After interviewing twenty-nine witnesses, the grievance was closed as unsubstantiated.

In early September 2002, Trooper Gerald Key reported that Plaintiff lied about the July 28, 2002, failure to remain in contact with the communications center incident and that Plaintiff had, in fact, not been on duty but at home.[4] On September 16, 2002, First Sergeant Hurley met with Plaintiff to discuss allegations of Plaintiff's untruthfulness.

---

2. First Sergeant Hurley has since been promoted to the rank of lieutenant.

3. The record seems to indicate that Sergeant Williams was not the appropriate authority to whom Plaintiff should have reported the problem.

4. Plaintiff points out that Trooper Key came forward with his allegations over eight weeks after the July 28, 2002, incident. Plaintiff suggests that the long delay in reporting Plaintiff's alleged untruthfulness, coupled with the proximity in time with Plaintiff's

On October 11, 2002, Plaintiff neglected to interview a driver of a wrecked vehicle. It was later determined that the driver of the wrecked vehicle had been impaired at the time of the collision and that his license was revoked. Defendants allege that Plaintiff would have discovered the problems if Plaintiff had carried out his normal duties. (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. B, Hurley Dep. Vol. I at 183–206.)

During the months of September and October 2002, First Sergeant Hurley filed several complaints against Plaintiff. The claims were based on Trooper Key's allegation of untruthfulness, Plaintiff's failure to remain in contact with the communications center on July 28, Plaintiff's August 28 overtime work to compensate for remaining in class too long, and Plaintiff's poor work performance on October 11, 2002. Captain Moody stated to Captain Fleetwood that it might appear that First Sergeant Hurley was "loading up" on Plaintiff because of the number of complaints filed in such a short time period. (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. D, Fleetwood Dep. at 29–30 and attached Ex. 1.)

On October 22, 2002, Defendants assigned Plaintiff to paid administrative leave pending investigation of the claims against him. The claims were based on complaints filed by First Sergeant Hurley. Internal Affairs called Plaintiff's house several times during the investigation, and according to Plaintiff reportedly left intimidating messages on the family voicemail. On October 23, 2002, Plaintiff's wife called Colonel Richard W. Holden, who was then the Patrol Commander, and wrote a letter complaining about the messages.

On November 13, 2002, Internal Affairs determined that the allegations of untruthfulness were unsubstantiated and Captain Moody reinstated Plaintiff to active duty. Investigation into the other complaints filed by First Sergeant Hurley relating to the incidents of July 28, August 28, and October 11, 2002, remained ongoing. Later in November, Captain Fleetwood determined that Plaintiff should be transferred to Durham County and made his recommendation known to Major Cooper. Captain Fleetwood based his determination almost entirely on information from First Sergeant Hurley. On November 25, 2002, Plaintiff was informed that effective December 2, 2002, he would be assigned to Durham County.

On November 27, 2002, Plaintiff checked out of service and informed the communications office that he would be at the local Equal Employment Opportunity Commission ("EEOC") office. Plaintiff went to the EEOC and filed his charge of discrimination alleging retaliation and racial discrimination. Plaintiff was at the EEOC for approximately three hours.

On December 2, 2002, Plaintiff was transferred to Durham County. As a condition of employment and as a result of the transfer, Plaintiff had to establish a residence in Durham County.

Sometime in December 2002, the internal investigation regarding the complaints filed by First Sergeant Hurley closed and Internal Affairs charged Plaintiff with unsatisfactory job performance, violation of patrol rules, and neglect of duty based on the incidents of July 28, August 28, and October 11, 2002, respectively.[5] Colonel Holden made the decision that the charges were substantiated and ordered a five percent reduction in Plaintiff's salary.[6]

internal grievance alleging racial discrimination, suggests unreliability and malfeasance.

5. Plaintiff contests the merits of the July 28 and August 28, 2002, incidents.

6. Plaintiff has moved to strike the affidavit of

"[D]ue to an oversight" Plaintiff's salary reduction was not effected until October 2004. (Defs.' Mem. Supp. Summ. J. at 5.)

On January 9, 2003, Plaintiff filed a petition with the North Carolina Office of Administrative Hearings ("OAH"). Plaintiff alleged that he was the victim of a demotion without just cause based on his race and in retaliation for complaining about racial discrimination.

In February 2004, Plaintiff received a written warning from Defendants regarding his November 27, 2002, absence from work to file the EEOC charge. (Defs.' Exs. Supp. Mot. Summ. J., Brand Dep. at 165–66.)

## DISCUSSION

I. *The Court has Subject Matter Jurisdiction to Hear Plaintiff's Claims under Title VII*

 Title VII creates a federal cause of action for employment discrimination. *Candillo v. North Carolina Dep't of Corr.*, 199 F.Supp.2d 342, 348 (M.D.N.C.2002). Before a federal court may assume jurisdiction over a claim under Title VII, however, a claimant must exhaust state and administrative procedures enumerated in 42 U.S.C. §§ 2000e–5(b) and 2000e–5(c). *Davis v. North Carolina Dep't of Corr.*, 48 F.3d 134, 137 (4th Cir.1995). Despite Defendants' argument otherwise, Plaintiff has properly exhausted his state and administrative remedies.

When alleged discrimination occurs in a state that has enacted a law "prohibiting the unlawful employment practice alleged" and has "establish[ed] or authoriz[ed] a

State or local authority to grant or seek relief from such practice,"[7] Title VII provides that: "no charge may be filed [with the EEOC] under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law." 42 U.S.C. § 2000e–5(c). The OAH, North Carolina's state agency established to hear discrimination claims, has sixty days in which to investigate the charge. *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 825, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990) (finding that the sixty-day period "give[s] state administrative agencies an opportunity to invoke state rules of law"). "[I]f the complainant initially filed the complaint with the EEOC, which then referred it to the state, 'the EEOC automatically [will] assume[ ] concurrent jurisdiction of the complaint' … upon 'expiration of the 60–day deferral period, whichever comes first.' " *Davis*, 48 F.3d at 137 (quoting *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 64, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980)). An aggrieved employee's rights "cannot be affected merely because the state agency makes only perfunctory efforts, elects to do nothing, or waives its right to proceed." 2 Barbara Lindemann & Paul Grossman, *Employment Discrimination Law* 1346 (3d ed.1996) (citations omitted). 42 U.S.C. § 2000e–5(b) requires that the EEOC decide whether the agency will bring the claim in federal court or whether the complainant will be issued a right-to-sue letter, which is essential to initiation of a private Title VII suit in federal court. *Davis*, 48 F.3d at 138.

---

Colonel Holden because he was not specifically identified during the pre-trial discovery. Because the court has considered the affidavit only to the extent that it tracks and confirms the historical facts as alleged by Plaintiff, the motion to strike will be denied.

7. North Carolina General Statute § 126–36 *et seq.* provides Plaintiff, a State of North Carolina employee, remedies for on-the-job discrimination. Section 126–36 allows a State employee who believes he is a victim of discrimination on the basis of age, sex, race, or national origin to pursue his case through the OAH.

Plaintiff filed a discrimination charge with the EEOC on November 27, 2002. Plaintiff alleged discrimination based on his race and retaliation. On December 17, 2002, Plaintiff amended his EEOC complaint to include a claim of a racially hostile work environment. On January 9, 2003, Plaintiff filed a petition with OAH pursuant to N.C. Gen.Stat. § 126–1 *et seq.* OAH subsequently stayed the claim pending proceedings in federal court.[8] On July 17, 2003, more than sixty days after Plaintiff filed his petition with OAH, the EEOC issued a right-to-sue letter. On October 15, 2003, ninety days after the issuance of the right-to-sue letter, Plaintiff filed a complaint in federal court under Title VII and 42 U.S.C. § 1981.[9] Therefore, Plaintiff properly exhausted his state and administrative remedies.

## II. *Timeliness of Plaintiff's Claims*

Defendants assert that some of Plaintiff's claims are time-barred because they are based on conduct occurring before May 31, 2002, outside of the 180–day time period preceding Plaintiff's EEOC filing on November 27, 2002. Even so, this would not prevent Plaintiff from pursuing claims arising within the three years prior to filing suit under 42 U.S.C. § 1981. Furthermore, it appears that the 300–day limitations period under Title VII would apply because Plaintiff is a state employee. *See Gibbs v. Guilford Technical Cmty. Coll.,* 1999 WL 33227441, at *2–3 (M.D.N.C.

1999). Plaintiff's Title VII hostile work environment claim is based in part on timely acts, and because such claims by their nature involve repeated conduct Plaintiff may also rely on untimely acts to support this claim. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (distinguishing the treatment of the timeliness issue regarding claims of hostile work environment and claims regarding discrete discriminatory acts).

## III. *Standard of Review*

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of persuasion on the relevant issues. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.,* 33 F.3d 390, 393–94 (4th Cir.1994) (moving

---

8. The record is unclear when OAH issued the stay, but the stay does not divest this court of jurisdiction. *See EEOC v. Fid. & Guar. Co.,* 538 F.2d 324 (Table), 1976 WL 23947 (4th Cir.1976) ("[O]nce notification and opportunity for deferral were provided to either the Maryland Commission on Human Relations or the Baltimore Community Relations Commission, the obligations imposed by the Act were satisfied").

9. It is irrelevant that Plaintiff filed his charge of discrimination regarding his demotion

claim with the EEOC before filing a petition with OAH. *See Davis,* 48 F.3d at 137 (internal citation omitted) ("[I]f the complainant initially filed the complaint with the EEOC ... the EEOC automatically [will] assume[ ] concurrent jurisdiction of the complaint ... upon expiration of the 60–day deferral period."). The sixty-day period merely gives OAH an opportunity to invoke state rules of law. *See Yellow Freight Sys., Inc. v. Donnelly,* 494 U.S. 820, 825, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990).

party on summary judgment motion can simply argue the absence of evidence by which the non-movant can prove its case). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. "The mere existence of a scintilla of evidence in support of the plaintiff's position," however, "will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505. Further, "[t]he nonmoving party ... cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985).

IV. *Plaintiff Failed to Establish a Prima Facie Claim of Race Discrimination Based on Disparate Treatment*

Plaintiff contends that Defendants discriminated against him due to his race in violation of Title VII and Section 1981. " 'Disparate treatment' ... is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or [other protected characteristic]." *Raytheon Co. v. Hernandez,* 540 U.S. 44, 52, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003) (citations omitted). The employee bears the initial burden of proving a *prima facie* case of discrimination by raising an inference that the employer acted with discriminatory intent. *Wileman v. Frank,* 979 F.2d 30, 33 (4th Cir.1992). "The burden of establishing a *prima facie* case of disparate treatment is not onerous." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The elements required to establish a *prima facie* case are the same under Title VII and Section 1981. *Causey v. Balog,* 162 F.3d 795, 804 (4th Cir.1998) (citing *Gairola v. Com. of Virginia Dep't of Gen. Servs.,* 753 F.2d 1281, 1285 (4th Cir.1985), for the proposition that "elements of a *prima facie* case are the same under Title VII[and] § 1981"). Absent direct evidence of discriminatory intent, courts look to the analysis of *McDonnell Douglas* and its progeny to determine whether a plaintiff has met his burden in presenting an inference of discriminatory intent. *Id.* (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). The elements set forth in *McDonnell Douglas* are flexible and must be tailored to differing factual circumstances. *McDonnell Douglas Corp.,* 411 U.S. at 802 n. 13, 93 S.Ct. 1817 ("The facts necessarily will vary in Title VII cases, and the specification ... of the prima facie proof required from [a plaintiff] is not necessarily applicable in every respect to differing factual situations.").

> To establish a *prima facie* case of racial discrimination in the enforcement of employee disciplinary measures under Title VII, [Brand] must show (1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees.

*Cook v. CSX Transp., Corp.,* 988 F.2d 507, 511 (4th Cir.1993).

▮ Plaintiff fails to present a *prima facie* case of disparate treatment and cannot withstand summary judgment on this issue.[10] Plaintiff fails to demonstrate that

---

10. In making his disparate treatment claim, Plaintiff's allegations include that Defendants assigned him comparatively excessive calls, denied him educational leave, assigned calls

interfering with Plaintiff's class schedule, padded Plaintiff's file with complaints, and trans-

similarly situated employees outside his class were treated more favorably than he was for similar conduct. Plaintiff presents only his own speculation and the speculation of his co-workers regarding the disparate treatment of African–American troopers, and speculation alone is not enough to withstand summary judgment. *See Beale,* 769 F.2d at 214. *See also Williams v. Cerberonics, Inc.,* 871 F.2d 452, 456 (4th Cir.1989); *Goldberg v. B. Green & Co.,* 836 F.2d 845, 848 (4th Cir.1988). Accordingly, Plaintiff's claim regarding disparate treatment cannot withstand Defendants' motion for summary judgment.

### V. *Plaintiff has Stated a Prima Facie Case of Retaliation*

■ To establish a *prima facie* case of retaliation, Plaintiff must show that (1) he engaged in a protected activity, (2) his employer subjected him to an adverse employment action, and (3) there was a causal link between the activity and the adverse action. *Causey,* 162 F.3d at 803; *Beall v. Abbott Labs.,* 130 F.3d 614, 619 (4th Cir. 1997). At issue here is whether Defendants subjected Plaintiff to an adverse employment action.[11]

■ An adverse employment action is an action that actually adversely affects a term, condition, or benefit of employment. *Von Gunten v. Maryland,* 243 F.3d 858, 869 (4th Cir.2001); *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 190 (4th Cir. 2001). Adverse employment actions do not include "interlocutory or mediate decisions having no immediate effect upon employment conditions," *Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.1981), or "trivial discomforts endemic to employment," *Boone v. Goldin,* 178 F.3d 253, 256 (4th Cir.1999).

■ Discriminatory intent cannot be inferred from an employer's attempt to " 'build up a file' " on an employee absent evidence that the employer's alleged recording of deficiencies "was racially motivated or that [the employee] was written up differently from other similarly situated employees." *Karpel v. Inova Health Sys. Servs.,* 134 F.3d 1222, 1228 (4th Cir.1998). Discriminatory intent may be found, however, when an employer dramatically increases the number of negative reports regarding an employee and that employee was treated differently from similarly situated employees. *See Few v. Yellow Freight Sys., Inc.,* 845 F.2d 123, 124–25 (6th Cir.1988).

■ An employer's decision to transfer "does not qualify as an adverse employment action unless the decision 'had some significant detrimental effect' on the employee." *Wagstaff v. City of Durham,* 233 F.Supp.2d 739, 744 (M.D.N.C.2002) (quoting *Boone v. Goldin,* 178 F.3d 253, 256 (4th Cir.1999)). "[A]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." *Boone,* 178 F.3d at 256–57; *see also Vester v. Henderson,* 178 F.Supp.2d 594, 596–97 (M.D.N.C.2001); *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th

---

ferred Plaintiff to Durham County with a decrease in pay.

11. "[V]ery little evidence of a causal connection is required to establish a *prima facie* case. In fact, we have held that merely the closeness in time between the filing of a discrimination charge and an employer's firing an employee is sufficient to 'make a *prima facie* case of causality.' " *Tinsley v. First Union Nat. Bank,* 155 F.3d 435, 443 (4th Cir. 1998) (citing *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989)). Here, the proximity in time of events satisfies the causal connection element.

Cir.1993) (finding that a lateral transfer with a semantic change in title and alteration of job responsibilities similarly is not actionable under ADEA); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994) (finding that employee's reassignment to new position with no diminution in title, salary, or benefits insufficient to establish adverse employment action).

Decreases in compensation due to discrimination are consistently held to constitute adverse employment actions. *See, e.g., Boone,* 178 F.3d at 255 (finding that decreases in pay constitute adverse employment actions); *Page,* 645 F.2d at 233 (stating that inquiries into adverse employment actions focus on whether there has been discrimination in decisions involving compensation). This is so because typically a decrease in salary materially alters the terms, conditions, or benefits of employment. *Von Gunten,* 243 F.3d at 866.

Plaintiff cites the complaints filed by First Sergeant Hurley against Plaintiff, Plaintiff's transfer, and Plaintiff's reduction in pay as adverse employment actions made in retaliation for Plaintiff's filing of an internal grievance in early September 2002. Defendants counter that neither writing up an employee for violations nor transferring an employee constitutes an adverse employment action, and that a reduction in pay must actually be effected to constitute an adverse action. Defendants admit, however, that the failure to reduce Plaintiff's salary was "due to an oversight." [12] (Defs.' Mem. Supp. Summ. J. at 5.)

The court finds that Plaintiff has sufficiently stated a *prima facie* case for retaliation. Plaintiff has presented evidence suggesting a retaliatory motive by Defendants in responding to Plaintiff's internal grievance filing, including the timing of the untruthfulness allegation by Trooper Key and the concern expressed by Captain Moody that it appeared that First Sergeant Hurley was "loading up" on Plaintiff soon after Plaintiff filed his internal grievance. (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. D, Fleetwood Dep. at 29–30 and attached Ex. 1.) Captain Fleetwood's decision to transfer Plaintiff was based primarily on information obtained from First Sergeant Hurley. Colonel Holden's decision to reduce Plaintiff's pay was caused by a series of complaints initiated by First Sergeant Hurley and was made after Plaintiff visited the EEOC.[13] The fact that the reduction in pay was not actually effected until recently does not undermine the court's finding that it constituted an adverse employment action for purposes of summary judgment because Defendants admit that the failure to execute the pay cut was merely an oversight. Accordingly, the court finds that Plaintiff has sufficiently stated a *prima facie* claim of retaliation.

## VI. *Plaintiff Meets his Burden in Responding to Defendants' Proffered Legitimate, Non–Discriminatory Reasons*

Plaintiff's claim of retaliation is subject to the burden-shifting scheme of *McDonnell Douglas Corp.* and its progeny since Plaintiff presents no direct evidence of dis-

---

**12.** In October 2004, Defendants corrected this oversight and effected the five percent decrease in Plaintiff's pay.

**13.** Defendants make much of the fact that Plaintiff admitted in his deposition that Colonel Holden never discriminated against him because of his race. However, "there are situations in which the forbidden motive of a subordinate employee can be imputed to an employer because under the circumstances of the case, the employer simply acted as the 'cat's paw' of the subordinate." *Dunn v. City of High Point,* 68 F.Supp.2d 672, 680 (M.D.N.C.1999) (quoting *Willis v. Marion County Auditor's Office,* 118 F.3d 542, 547 (7th Cir.1997)).

crimination. *Hawkins v. PepsiCo. Inc.*, 203 F.3d 274, 281 n. 1 (4th Cir.2000) ("The *McDonnell Douglas* framework applicable to claims of race discrimination applies to retaliation claims as well."). Once Plaintiff establishes a *prima facie* case of retaliation, "the burden of production shifts to the employer 'to articulate some legitimate, non-discriminatory reason" ' for its action. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817); *see also Beall*, 130 F.3d at 619 (citing *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir.1994)).

Defendants proffer several legitimate, non-discriminatory reasons for the transfer and intended decrease in salary of Plaintiff. Defendants state that in December 2002, Defendants determined that Plaintiff committed three violations of the Highway Patrol's policy warranting discipline.[14] First, Plaintiff failed to remain in contact with the communications center for approximately thirty-eight minutes on July 28, 2002. Second, on August 28, 2002, Plaintiff remained in a class thirty minutes longer than he was entitled and worked thirty minutes overtime without permission to make up the lost time. Third, Plaintiff admitted that he was not working at "full capacity" on October 11, 2002, and, as a result, Plaintiff neglected to interview the driver of a wrecked vehicle who was later determined to be intoxicated.

Defendants also argue that Plaintiff's absence on November 27, 2002, in order to file a charge with the EEOC was unreasonable and disruptive in light of the anticipated demands arising from the Thanksgiving holiday traffic. Defendants characterize Plaintiff's timing as hazardous to the public and taken without permission. Defendants also state that any trooper may be transferred at the Highway Patrol Commander's discretion.

Once an employer meets the burden of producing a legitimate, non-discriminatory reason for termination, the employee "must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). "[T]he plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.' " *Id.* (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089). While the presumption of discrimination "drops out of the picture" after the employer meets its burden in presenting legitimate, non-discriminatory reasons for its actions, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the trier of fact may still consider the evidence establishing the plaintiff's *prima facie* case "and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual," *Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. 1089. In analyzing the employer's proffered reason, " 'it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so

---

**14.** In October 2002, Defendants began an internal investigation of charges against Plaintiff and placed Plaintiff on paid leave pending the investigation. The charges were premised on complaints filed by First Sergeant Hurley. On November 13, 2002, Defendants determined that the untruthfulness charge against Plaintiff was without merit and reinstated Plaintiff to active duty. An investigation into the other three charges remained open until December 2002.

long as it truly was the reason for the plaintiff's termination.'" *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir.1997)). The court's sole concern "is whether the reason for which the defendant discharged the plaintiff was discriminatory." *Id.*

Plaintiff contends that the reasons proffered by Defendants are not the true reasons for Defendants' adverse actions. Plaintiff suggests that the complaints were filed for nefarious reasons by First Sergeant Hurley, citing Trooper Key's timing in coming forward with his allegations of untruthfulness and Captain Moody's statement that it appeared First Sergeant Hurley was "loading up" on Plaintiff.[15] (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. D, Fleetwood Dep. at 29–30 and attached Ex. 1.) Plaintiff notes that First Sergeant Hurley and Captain Fleetwood both knew of Plaintiff's September 2002 internal grievance filing. Plaintiff also cites that, contrary to the normal procedures regarding unrequested trooper transfers, Durham County did not request or need an additional trooper.

■ In their memorandum supporting summary judgment, Defendants rely on Plaintiff's taking time off from work on November 27, 2002, to file an EEOC complaint as a reason justifying the transfer and decrease in pay, yet Defendants determined to transfer Plaintiff prior to his absence on November 27, 2002. (Defs.' Mem. Supp. Summ. J. at 15–16.) Even if the November 27, 2002, incident played a role in Plaintiff's transfer, Plaintiff contends that his absence from work on November 27, 2002, did not violate patrol policy, which allows a trooper leave to attend to personal matters while on duty

as long as the trooper continues to be within reach, remains in his patrol area, and attends to all traffic calls and matters within his jurisdiction. Plaintiff contends that he complied with the patrol policy in going to the EEOC to file his complaint because he advised his communications officer of his exact location in the event that his services were needed. First Sergeant Hurley knew of Plaintiff's whereabouts and could reach Plaintiff through Plaintiff's walkie-talkie if necessary. After determining Plaintiff's location, First Sergeant Hurley did not request that Plaintiff leave the EEOC. Plaintiff also discounts Defendants' reliance on the November 27, 2002, incident because there were several other officers on duty and no reports of problems or accidents to which Plaintiff needed to attend. Further, Plaintiff notes that First Sergeant Hurley authorized Plaintiff to leave work early on November 27, 2002, because of a lack of need for his presence, thus further evidencing that Plaintiff's absence did not actually adversely affect Defendants. It is undisputed that Defendants' disciplinary action to reduce Plaintiff's pay occurred in January 2003, just a month after Plaintiff's visit to the EEOC. The court finds that Plaintiff has met his burden in suggesting that Defendants' "'proffered explanation[s][are] unworthy of credence.'" *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089). Given the strength of Plaintiff's *prima facie* case for retaliation and the doubt cast on Defendants' proffered reasons, the court will deny summary judgment on the issue of retaliation.

## VII. *Hostile Work Environment*

■ To state a claim for hostile work environment, Plaintiff must demonstrate

---

**15.** The charges stemmed from complaints filed by First Sergeant Hurley, which Plaintiff contests as retaliatory. Plaintiff also challenges the merits of the charges for which he was found culpable.

that: (1) he experienced unwelcome harassment; (2) the harassment was based on race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; (4) there is some basis for imputing liability to the employer. *See Bass v. E.I. Dupont De Nemours & Co.,* 324 F.3d 761, 765 (4th Cir.2003). Defendants claim that Plaintiff failed to establish a *prima facie* case of hostile work environment.

■ In Plaintiff's brief in response to Defendants' motion for summary judgment, Plaintiff does not address Defendants's motion for summary judgment concerning his hostile work environment claim. By failing to respond, Plaintiff concedes that he has not stated a hostile work environment claim. *See, e.g., Reid v. Albemarle Corp.,* No. Civ.A. 96–7564–A–1, 2002 WL 31526451, at *1 (M.D.La. June 26, 2002) (granting summary judgment to defendants on salary discrimination claims because plaintiffs failed to address such claims in their reply to summary judgment motion); *Toney v. Rosewood Care Ctr., Inc.,* No. 98C693, 2001 WL 1105127, at *5 (N.D.Ill. Sept.20, 2001) (finding that plaintiffs had waived a claim by failing to respond to defendant's refutation of it); *Ostergren v. Vill. of Oak Lawn,* 125 F.Supp.2d 312, 323 (N.D.Ill.2000) (noting that plaintiffs who fail to address a claim in response to a motion for summary judgment waive the claim). Even if the court considers the evidence concerning Plaintiff's hostile work environment claim, however, Plaintiff would fail to survive summary judgment because his evidence is insufficient to make out a *prima facie* case for hostile work environment.

## CONCLUSION

For the foregoing reasons, the court will grant Defendants' motion for summary judgment regarding Plaintiff's racial discrimination and hostile work environment claims. The court will deny Defendants' motion for summary judgment regarding Plaintiff's retaliation claim. Plaintiff's motion to strike will be denied.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### *ORDER and JUDGMENT*

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED AND ADJUDGED that Defendants' motion for summary judgment regarding Plaintiff's racial discrimination and hostile work environment claims is **GRANTED** and those claims are **DISMISSED.**

IT IS FURTHER ORDERED that Defendants' motion for summary judgment regarding Plaintiff's retaliation claim is **DENIED.**

IT IS FURTHER ORDERED that Plaintiff's motion to strike [Doc. # 18] is **DENIED.**